[No. F014932. Fifth Dist. May 30, 1991.]

STEVEN RAY MARTIN, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Willard L. Weddell, Public Defender, and Gael A. Gisvold, Deputy Public Defender, for Petitioner.

Daniel E. Lungren, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, and Edgar A. Kerry, Deputy Attorney General, for Real Party in Interest.

**OPINION**

**ARDAIZ, J.—**

FACTS

On July 26, 1990, a criminal complaint was filed in the Kern County Municipal Court charging petitioner in count I with arson (Pen. Code, § 451, subd. (b))[1] and in count II with burglary (§ 460.1). Both counts were accompanied by several special allegations. Petitioner's preliminary hearing was held on September 20, 1990. At the preliminary hearing Mr. Griggs, an investigator for the Kern County Fire Department, was allowed to testify to hearsay statements pursuant to section 872, subdivision (b), one of the statutory provisions incorporated in Proposition 115. Petitioner was held to answer on both counts based in part on the hearsay testimony of Mr. Griggs. Petitioner filed a section 995 motion arguing that an arson investigator is not qualified to testify as a "law enforcement officer" within the meaning of section 872, subdivision (b).[2] The court rejected petitioner's argument and denied the motion.

We conclude a "peace officer" under section 830.37, subdivisions (a) and (b) falls within the definition of a "law enforcement officer" in section 872, subdivision (b).[3]

DISCUSSION

I.

*Whether a Peace Officer Under Penal Code Section 830.37, Subdivisions (a) and (b) Falls Within the Definition of a "Law Enforcement Officer" Under Penal Code Section 872, Subdivision (b)?*

On June 5, 1990, the voters approved Proposition 115. "This measure . . . is entitled by its framers as the 'Crime Victims Justice Reform Act.' " (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 340 [276 Cal.Rptr. 326, 801 P.2d 1077].)

This initiative measure significantly has changed the California preliminary hearing procedure. At issue in the present case is the amendment to subdivision (b) of section 872. The section now provides:

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

[2]Petitioner does not challenge the constitutional or statutory provisions of Proposition 115 in any other respect.

[3]We need not resolve which, if any, other "peace officers" as set forth in sections 830 et seq. are "law enforcement officers" within the meaning of section 872, subdivision (b).

"Notwithstanding Section 1200 of the Evidence Code, the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted. Any law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings."

The issue raised by petitioner requires construction of the phrase "law enforcement officer" in subdivision (b) of section 872.

■ "In construing constitutional and statutory provisions, whether enacted by the Legislature or by initiative, the intent of the enacting body is the paramount consideration." (*In re Lance W.* (1985) 37 Cal.3d 873, 889 [210 Cal.Rptr. 631, 694 P.2d 744].) "In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citations.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]" (*Moyer* v. *Workmens' Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) "In construing an initiative measure, we are bound to bestow upon its language both the ordinary meaning of its terms and a practical common-sense interpretation." (*Russell* v. *Superior Court* (1986) 185 Cal.App.3d 810, 818 [230 Cal.Rptr. 102].) In determining the meaning of particular words employed in a statute, "[c]ourts should first look to the plain dictionary meaning of the words of the statute and their juxtaposition. [Citation.]" (*Rosenfield* v. *Superior Court* (1983) 143 Cal.App.3d 198, 202 [191 Cal.Rptr. 611].)

■ Petitioner contends the phrase "law enforcement officer" contained in section 872, subdivision (b) is controlled by the definition of law enforcement officer set forth in section 13519. Section 13519 deals with the requisite training for those officers handling domestic violence complaints. This section provides in relevant part:

"*As used in this section,* 'law enforcement officer' means any officer or employee of a local police department or sheriff's office or any peace officer of the Department of Parks and Recreation, as defined in subdivision (h) of Section 830.2."

We reject petitioner's argument. He provides no support for the assertion that the Legislature intended this definition of "law enforcement officer" be applicable to all other sections of the Penal Code. In fact, the statute, by its

very terms, limits the applicability of the definition to that section. Section 13519 provides a specific definition of law enforcement officer to require specialized training only of those officers most likely to be called upon to deal with the type of incidents (i.e., domestic violence) for which the specialized training is designed.

 Moreover, there is no rule of law requiring that the same definition be applied to the same word or phrase appearing in different sections of the Penal Code. In fact, the same word appearing in the *same* statute may be defined differently where such difference in definition effectuates the intent of the statute. In *People* v. *Hernandez* (1981) 30 Cal.3d 462 [179 Cal.Rptr. 239, 637 P.2d 706], the court stated: "It is presumed, in the absence of anything in the statute to the contrary, that a repeated phrase or word in a statute is used in the same sense throughout. [Citations.] The rule is, however, quite flexible: 'There is no rule of law that necessarily requires the same meaning to be given to the same word used in different places in the same statute.' [Citations.] 'When the occasion demands it, the same word may have different meanings to effectuate the intention of the act in which the word appears.' [Citations.]" (*People* v. *Hernandez, supra*, at p. 468.) Moreover, where " 'a word of common usage has more than one meaning,' " one that will best serve the legislative purpose should be adopted, " 'even though the ordinary meaning of the word is thereby enlarged or restricted . . . .' " (*Moyer, supra*, 10 Cal.3d at p. 232.)

 A commonsense construction of the phrase "law enforcement officer" necessarily includes a peace officer as defined in section 830.37, subdivisions (a) and (b).[4] "Law enforcement officer" has been defined as "[a] policeman, sheriff, deputy sheriff, constable, or other officer whose duty it is to be vigilant in discovering violations of the criminal laws and ordinances and to arrest offenders." (Ballentine's Law Dict. (3d ed. 1969).) Section 830.37, subdivision (a) defines as a peace officer any member of an arson investigating unit with a county fire department, "*if the primary duty of*

---

[4]Section 830.37 provides: "The following persons are peace officers whose authority extends to any place in the state for the purpose of performing their primary duty or when making an arrest pursuant to Section 836 as to any public offense with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of that offense, or pursuant to Section 8597 or 8598 of the Government Code. Those peace officers may carry firearms only if authorized and under terms and conditions specified by their employing agency. [¶] (a) Members of an arson-investigating unit, regularly paid and employed in that capacity, of a fire department or fire protection agency of a county, city, city and county, district, or the state, if the primary duty of these peace officers is the detection and apprehension of persons who have violated any fire law or committed insurance fraud. [¶] (b) Members other than members of an arson investigation unit, regularly paid and employed in that capacity, of a fire department or fire protection agency of a county, city, city and county, district, or the state, if the primary duty of these peace officers, when acting in that capacity, is the enforcement of laws relating to fire prevention or fire suppression."

*these peace officers is the detection and apprehension of persons who have violated any fire law or committed insurance fraud.*" (§ 830.37, subd. (a), italics added.) Subdivision (b) of section 830.37 defines as a peace officer any member, other than a member of an arson investigation unit, who is regularly employed by a fire department, "*if the primary duty of these peace officers . . . is the enforcement of laws relating to fire prevention or fire suppression.*" (§ 830.37, subd. (b), italics added.)

Because the primary duty of a peace officer under either subdivision (a) or (b) is the enforcement of fire laws and/or the apprehension of persons who violated these laws, a reasonable interpretation would conclude such peace officers are law enforcement officers.

Respondent persuasively contends the intent of Proposition 115 and the purpose in particular of section 872, subdivision (b), are effectuated by construing the phrase "law enforcement officer" to include a peace officer as defined in subdivisions (a) and (b) of section 830.37. The goals of the people in enacting Proposition 115 are clearly set forth in subdivision (c) of section 1 of the initiative. Subdivision (c) provides:

"[t]he goals of the people in enacting this measure are to restore balance to our criminal justice system, to create a system in which justice is swift and fair, and to create a system in which violent criminals receive just punishment, in which crime victims and witnesses are treated with care and respect, and in which society as a whole can be free from the fear of crime in our homes, neighborhoods, and schools."

Proposition 115 added section 29 to article I of the state Constitution to provide that "[i]n a criminal case, the people of the State of California have the right to due process of law and to a speedy and public trial." Proposition 115 also added section 30, subdivision (b) to article I of the state Constitution. Subdivision (b) of article I, section 30, provides: "In order to protect victims and witnesses in criminal cases, hearsay evidence shall be admissible at preliminary hearings, as prescribed by the Legislature or by the people through the initiative process."

A review of these provisions of Proposition 115 demonstrates the objectives of the initiative in part were to expedite the criminal process and to provide protection to victims and witnesses in criminal cases. More specifically, the purpose of permitting hearsay evidence at the preliminary hearing under section 872, subdivision (b) was to protect witnesses and victims from having to testify both at the preliminary hearing and again at trial. In order to effectuate this purpose, subdivision (b) of section 872 allows the victims' and the witnesses' statements to be introduced via the testimony of trained

and experienced officers. Holding that a peace officer under subdivisions (a) and (b) of section 830.37 is a law enforcement officer within the meaning of section 872, subdivision (b) effectuates the purpose of Proposition 115— prevention of delay and protection of witnesses.

Further, other than benefiting from a restrictive definition of law enforcement officer, we fail to discern how interpreting a peace officer as a law enforcement officer deprives petitioner of any intended protection under Proposition 115. The evident purpose is to ensure a trained investigator relates the hearsay declarations. The experience/training requirements are stated in the alternative. It is reasonable to conclude the drafters intended one to suffice in the absence of the other. Thus, in the absence of specific training in the investigating and reporting of cases and testifying at preliminary hearings, five years' experience as a law enforcement officer was deemed sufficient to constitute equivalent training. Such requirements direct themselves in large part to the accuracy of reporting and the manner of presentation. Petitioner does not, in any manner, demonstrate how the experience/training of a fire investigator may have deprived him of any intended protection under 872, subdivision (b).

Here Mr. Griggs testified that as an arson investigator with the Kern County Fire Department, he was assigned to investigate the fire in question. During the course of his investigation, Mr. Griggs interviewed both the victims of the crime and several of the witnesses. Had he not been able to present this hearsay testimony, each of the witnesses he had interviewed during the course of his investigation would have been required personally to appear and testify at the preliminary hearing. Not only would this have inconvenienced the witnesses, who will also have to appear and testify if the case goes to trial, their individual testimony would have substantially extended the time required to complete the preliminary hearing. We find Mr. Griggs was a law enforcement officer as that term is used in section 872, subdivision (b).

II.

*Whether Mr. Griggs Properly Was Qualified to Testify as a Law Enforcement Officer?*

■ Alternatively, petitioner asserts the trial court erred in concluding that Mr. Griggs qualified to testify as a law enforcement officer. Mr. Griggs was allowed to respond affirmatively when asked whether he "qualified as a peace officer under the Penal Code." Petitioner contends this question called for a legal conclusion. Under the circumstances of this hearing, we perceive this objection as directed to whether Mr. Griggs was qualified to testify

under section 872, subdivision (b). Even assuming error, we find no prejudice.

As a general rule, the qualification of a witness to testify is a determination to be made under Evidence Code section 405.[5] (*People* v. *Chavez* (1985) 39 Cal.3d 823, 828 [218 Cal.Rptr. 49, 705 P.2d 372]; *Jutzi* v. *County of Los Angeles* (1987) 196 Cal.App.3d 637, 646-647 [242 Cal.Rptr. 74].) Consistent with this general rule, the determination of whether Mr. Griggs was qualified to testify under section 872 (if in fact disputed by appellant) was to be made by the trial court before Mr. Griggs was permitted to testify. Here, Mr. Griggs essentially was allowed to express a legal conclusion on an issue within the exclusive province of the court.

Even assuming, however, that the objection should have been sustained, we find no prejudice to petitioner. We have previously addressed a similar contention of error under Evidence Code section 405 in *People* v. *Bennett* (1976) 58 Cal.App.3d 230 [129 Cal.Rptr. 679]. In *Bennett*, the issue before the trial court was whether appellant had waived his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) prior to giving a statement.

"Instead of adjudicating the *Miranda* question as required by Evidence Code section 405, the trial court apparently accepted the prosecutor's bald assertion that appellant had been advised of his constitutional rights by Dr. Lunde and overruled the objection.

"Regardless of the trial court's procedural error, however, appellant has suffered no prejudice if the prosecution proved through the testimony of Dr. Lunde or other witnesses that appellant's statements at the interviews were in fact preceded by an adequate waiver of his *Miranda* rights. Thus, as a reviewing court, we must independently examine the record to determine if the *Miranda* requirements were satisfied." (58 Cal.App.3d at p. 236.)

In evaluating the record before us, it is clear Mr. Griggs met the experience requirements set forth in section 872, subdivision (b). The officer must

[5]"With respect to preliminary fact determinations not governed by Section 403 or 404: [¶] (a) When the existence of a preliminary fact is disputed, the court shall indicate which party has the burden of producing evidence and the burden of proof on the issue as implied by the rule of law under which the question arises. The court shall determine the existence or nonexistence of the preliminary fact and shall admit or exclude the proffered evidence as required by the rule of law under which the question arises. [¶] (b) If a preliminary fact is also a fact in issue in the action: [¶] (1) The jury shall not be informed of the court's determination as to the existence or nonexistence of the preliminary fact. [¶] (2) If the proffered evidence is admitted, the jury shall not be instructed to disregard the evidence if its determination of the fact differs from the court's determination of the preliminary fact." (Evid. Code, § 405.)

"either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings."

Mr. Griggs testified he had been employed as a fire investigator with the Kern County Fire Department for approximately seven years. When asked about his training and experience as a fire investigator, Mr. Griggs testified he had approximately 500 hours of specialized training. He also testified he had investigated approximately 500 fires over the years, 70 percent of which were incendiary.[6]

Mr. Griggs's testimony establishes he had at least seven years' experience in the area of investigating fires to determine if arson was involved. Accordingly, he was qualified to testify as a "law enforcement officer" within the meaning of section 872, subdivision (b). Thus, assuming procedural error, we find no prejudice.

## DISPOSITION

The petition for writ of mandate/prohibition is denied.

Stone (W. A.), Acting P. J., and Buckley, J., concurred.

---

[6]Petitioner moves to strike the first full paragraph of page 11 of real party's return. He argues there is no evidence in the record regarding Mr. Griggs's "duties or even if he was a member of an arson investigating unit." The motion is denied. As set forth above, there is evidence in the record regarding Mr. Griggs's training and experience as a fire investigator.