[No. B072882. Second Dist., Div. Five. Aug. 30, 1993.]

JOHN ALLEN SIMS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Wilbur Littlefield, Public Defender, Albert J. Menaster, Ilona Peltyn and Kathy Quant, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Gil Garcetti, District Attorney, Diana L. Summerhayes and Brentford J. Ferreira, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**GODOY PEREZ, J.**—Penal Code section 872, subdivision (b), enacted as part of the "Crime Victims Justice Reform Act" (Proposition 115) in 1990, permits hearsay testimony at a preliminary hearing by a "law enforcement officer."[1] At issue in this case is whether an investigator for the Franchise Tax Board qualifies as a "law enforcement officer" for purposes of section 872, subdivision (b).

We find that section 872, subdivision (b), is not restricted in its application to "traditional" law enforcement officers authorized to carry weapons and make arrests, but rather is intended to encompass officers and agents with knowledge of the pertinent laws underlying the charged crime who can provide meaningful testimony at preliminary hearings. For that reason, we conclude section 872, subdivision (b), applies to officers and agents employed by a federal, state or local government agency: 1) who meet the threshold training and experience requirements set forth in that provision; and 2) whose primary responsibility is to investigate and prepare for prosecution cases involving violations of laws.

In this case, the Franchise Tax Board investigator who offered hearsay testimony at petitioner's preliminary hearing met both of the above requirements. Accordingly, his hearsay testimony was properly admitted.

### FACTS AND PROCEDURAL HISTORY

Petitioner John Allen Sims was charged with eight counts of filing false income tax returns (Rev. & Tax. Code, § 19405), and one count of grand theft of personal property (§ 487, subd. 1). Petitioner was held to answer following a preliminary hearing wherein the People's case, some of which consisted of hearsay evidence, was presented through the testimony of Agent Pedro Huerta, an investigator for the California Franchise Tax Board.

Before Agent Huerta testified about the investigation which gave rise to the charges in the complaint, a foundational hearing was held to determine whether he was qualified to offer hearsay testimony as a "law enforcement officer," as that term is used in section 872, subdivision (b).

Agent Huerta testified about his job description and duties. His official job title is "Investigative Specialist I" and he is also known as a "Special Agent," the position to which he was promoted in 1984. He has a bachelor of science degree in accounting and has attended special law enforcement

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

classes, including two months of training at the Glynco Federal Training Facility in Georgia, the same facility used to train Internal Revenue Service agents. This training included criminal investigation techniques, such as identifying fraudulent tax returns, and instruction in setting up and developing criminal cases. Agent Huerta also completed a training course certified by the Commission on Peace Officer Standards and Training (POST) approximately four to six weeks before his testimony in this case.

Agent Huerta's job is to enforce the laws contained in the California Revenue and Taxation Code. More than 90 percent of the time spent on his job consists of investigating criminal cases, either those referred by district attorneys or developed within the Franchise Tax Board. In the course of his job, he questions witnesses, takes affidavits, analyzes business transactions, and locates and examines taxpayer assets and liabilities.

The magistrate concluded that Agent Huerta met the foundational experience and training requirements of section 872, subdivision (b), and was therefore a "law enforcement officer" for purposes of that section.

Agent Huerta then testified about his investigation which led to the charges against petitioner. Briefly summarized, Huerta testified that an individual by the name of John Sims filed seven different California personal income tax returns (form 540) for the tax year 1984. In four of the returns, Sims's employer was listed as "Western States Horseman Association" in Torrance, California. Agent Huerta went to the employer's address listed on the tax form and found that no such address existed. He further learned, from representatives of the City of Torrance, that no business permit had been issued to the "Western States Horseman Association" and no building permits had been issued for the address listed on the form. The same was true of the employer listed on three other forms, "The Her House."

From the Social Security Administration, Agent Huerta learned that the Social Security number listed on the tax form involved in count I was not the number issued to petitioner and, in fact, was nonexistent. The People offered into evidence a certification of petitioner's Social Security number provided by the Social Security Administration.

On each of the forms involved in counts I through VII, Sims claimed eight children as dependents and listed charitable contributions of $3,000. Sims also claimed excess withholding of approximately $2,172, and in each case refund checks were issued by the Franchise Tax Board for the excess withholding amounts. The checks were mailed to the home addresses listed on each form, and Agent Huerta visited each location. In most cases, the

occupants had never heard of Sims. In one case, the address was an abandoned home; in another the address was that of Sims's former wife. On one occasion the former wife had seen Sims rifling through her mailbox and had also seen him parked outside the home awaiting the arrival of the postal carrier. Although Sims had received mail at the address from time to time, including one envelope which appeared to be a tax refund check, his former wife told him he was not to receive mail there anymore.

In the case of one return, filed for the tax year 1985, the employer listed on the tax form, Metro Auto Parts, actually did exist. In fact, Sims had worked there at one time, but not in 1985. As with the other forms, the occupant of the home listed as the taxpayer's address had never heard of Sims.

At the conclusion of Sims's preliminary hearing on November 20, 1992, he was held to answer and a felony complaint was filed. On January 19, 1993, Sims filed a motion to set aside the information under section 995. The motion was heard and denied by the respondent court on January 19, 1993.

This petition was filed January 29, 1993, and summarily denied February 4, 1993. Sims sought review in the California Supreme Court. On March 25, 1993, the Supreme Court granted the petition and directed us to issue an alternative writ. The writ was issued on April 7, 1993. The respondent court did not comply with the alternative writ.

## DISCUSSION

In June 1990, the voters of California enacted the "Crime Victims Justice Reform Act," designated on the ballot as Proposition 115, which added to the state Constitution and various state statutes a number of provisions relating to the admission of hearsay evidence. Added by the passage of Proposition 115 was section 30, subdivision (b), of article I of the state Constitution allowing the admission of hearsay evidence at preliminary hearings "as prescribed by the Legislature or by the people through the initiative process." By virtue of that initiative process, subdivision (b) was added to section 872 and provides: "Notwithstanding Section 1200 of the Evidence Code, the finding of probable cause[2] may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter

---

[2] A defendant may be held to answer after a preliminary hearing if the magistrate finds "that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty . . ." (§ 872, subd. (a).)

asserted. Any law enforcement officer testifying to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission of Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings."

Section 872, however, does not specifically define the term "law enforcement officer." ▉ The question before us now is who falls within the category of "law enforcement officer" under section 872, subdivision (b). Sims would limit that section to "traditional" law enforcement officers, such as the police and sheriffs, and those the courts have determined, on a case-by-case basis, fall within the section's definition of "law enforcement officer." Sims contends that without this narrow construction of the term "law enforcement officer," section 872 could permit civilian witnesses, such as members of the "Guardian Angels" and "Neighborhood Watch," to present hearsay testimony at preliminary hearings. Sims further contends that because Agent Huerta does not fall within the presently identifiable categories of law enforcement officer, the magistrate should not have permitted him to offer hearsay testimony at Sims's preliminary hearing. Absent that testimony, says Sims, there was insufficient evidence to hold him to answer, and his motion pursuant to section 995 should have been granted. Sims's approach overlooks the safeguards contained in section 872, and invites unnecessary delays inherent in case-by-case reviews. We believe a more practical approach, as set forth below, appropriately addresses his concerns.

In *Martin* v. *Superior Court* (1991) 230 Cal.App.3d 1192 [281 Cal.Rptr. 682], this court considered whether an arson investigator, defined as a peace officer in section 830.37, subdivisions (a) and (b), fell within the definition of a law enforcement officer under section 872. Refusing to limit its definition of law enforcement officer to the only definition of that term found in the Penal Code, which is section 13519, dealing with training of officers handling domestic violence complaints, the *Martin* court, instead, applied a commonsense approach in construing the phrase "law enforcement officer." Guided by the stated goals of Proposition 115, the court focused on the primary duty of a peace officer/arson investigator, identified that duty as the enforcement of laws or apprehension of those who disobey those laws, and concluded that the peace officer/arson investigator was a "law enforcement officer," within the meaning of section 872. (*Martin* v. *Superior Court, supra*, 230 Cal.App.3d at pp. 1197-1198.)

The *Martin* court's objective was to effectuate the goals of Proposition 115, specifically to expedite criminal proceedings and to protect victims and

witnesses in criminal cases. Towards this purpose, ". . . section 872 allows the victims' and the witnesses' statements to be introduced via the testimony of trained and experienced officers." (230 Cal.App.3d at pp. 1198-1199.) Moreover, there appears to be no rational basis for restricting the definition of law enforcement officer to those individuals authorized to carry weapons and make arrests. Such restrictions have no relevance to the purpose of the statute nor to an individual's ability to provide meaningful testimony on violations of laws at a preliminary hearing. (*Martin* v. *Superior Court, supra*, 230 Cal.App.3d at p. 1198.) To so limit the definition of law enforcement officer in section 872 would ill serve the purposes of the statute.

Taking our cue from the *Martin* court's commonsense approach and deference to the purposes of the statute, we turn to the case at bench. A Franchise Tax Board investigator is not a peace officer, either traditionally or statutorily.[3] That omission, however, is not determinative; rather, the critical inquiry is whether Agent Huerta's qualifications and duties are commensurate with those of individuals upon whom the Legislature has, for whatever reason, conferred "peace officer" status. If they are, he should be treated no differently than those individuals for purposes of section 872, subdivision (b).

Of considerable significance is the fact that the categories of persons defined as "peace officers" in section 830 et seq. enjoy that status *only* if their primary duty is the enforcement of the laws administered by their employing agency. For example, an investigator employed by the Department of Corporations is a "peace officer" only if his or her primary duty is the "enforcement of the provisions of law administered by the Department of Corporations." (§ 830.3, subd. (*l*).) These individuals enjoy peace officer status because they are specialists in investigating potential violations of the laws which come within the purview of the Department of Corporations. They also assist local prosecutors in enforcing those laws. In other words, their primary duties involve law enforcement.

Agent Huerta's qualifications and duties are equal to those of the state agency investigators who, by statute, enjoy "peace officer" status. To limit

---

[3]Section 830 provides, "Any person who comes within the provision of this chapter and who otherwise meets all standards imposed by law on a peace officer is a peace officer, and notwithstanding any other provision of law, no person other than those designated in this chapter [4.5] is a peace officer. The restriction of peace officer functions of any public officer or employee shall not affect his or her status for purposes of retirement."

Section 830.1 identifies traditional law enforcement officers, county sheriffs, city or district police, and marshals as peace officers.

Thereafter, sections have been added which include as peace officers employees of such departments and agencies as the Department of Alcoholic Beverage Control, the Department of Parks and Recreation, the Department of Forestry, Municipal Water Districts, and even messengers of the Treasurer's Office.

the definition of "law enforcement officer" to those included within the applicable statutes would make the testifying officer's eligibility dependent upon the particular code provisions which the defendant stands accused of violating, and not upon the investigator's qualifications. If, for example, Sims had been accused of violating a statute within the domain of the Department of Corporations, the Contractors' State License Board, the Department of Consumer Affairs or the Public Employees' Retirement System, there would have been no need for this proceeding, since the investigators charged with enforcing the laws administered by those agencies are, by statutory definition, "peace officers."

Moreover, the foundational requirements set forth in section 872, subdivision (b) exist to insure that any hearsay testimony given at a preliminary hearing will be reliable. Thus, in permitting only officers with lengthy experience or special training to testify regarding out-of-court statements, section 872, subdivision (b), "plainly contemplates that the testifying officer will be capable of using his or her experience and expertise to assess the circumstances under which the statement is made and to accurately describe those circumstances to the magistrate so as to increase the reliability of the underlying evidence." (*Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1074 [2 Cal.Rptr.2d 160, 820 P.2d 262].) The Supreme Court held in *Whitman* that a "reader," that is, a non-investigating officer who lacks personal knowledge of either the crime or the circumstances under which the hearsay statements were made, and merely reads a report prepared by another officer who may lack the required experience or training, is not qualified to offer hearsay testimony under section 872, subdivision (b). We are satisfied that section 872 and applicable case law provide adequate safeguards in properly restricting hearsay testimony.

We therefore hold that an investigating agent or officer employed by a state, federal or local agency, whose primary duty is to enforce the laws administered by that agency, and who otherwise meets the foundational qualifications of section 872, subdivision (b), (five years' experience or POST training), may offer hearsay testimony at a preliminary hearing.

In the present case, Agent Huerta had the requisite POST training, more than five years' experience investigating violations of the Revenue and Taxation Code, and specialized training in the investigation of criminal tax fraud cases. Equally important, his primary duty was the enforcement of the laws of his agency. We conclude Agent Huerta's testimony was properly admitted.

## DISPOSITION

The petition for writ of mandate is denied and the alternative writ is discharged.

Grignon, Acting P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied September 16, 1993, and petitioner's application for review by the Supreme Court was denied November 24, 1993. Mosk, J., was of the opinion that the application should be granted.