[No. B114450. Second Dist., Div. Five. Feb. 8, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
FRONTIER PACIFIC INSURANCE COMPANY, Defendant and
Appellant.

## COUNSEL

Laizer D. Gould for Defendant and Appellant.

Gil Garcetti, District Attorney, Brentford J. Ferreira and William Woods, Deputy District Attorneys, for Plaintiff and Respondent.

## OPINION

**ARMSTRONG, J.**—In this bail forfeiture proceeding, the trial court denied the motion of appellant Frontier Pacific Insurance Company to vacate a bail forfeiture after the Los Angeles District Attorney's Office failed to initiate extradition proceedings against criminal defendant Jose Luis Cortez (Cortez), who had absconded to Mexico. The trial court ruled that appellant had failed to meet the requirements of Penal Code[1] section 1305, subdivision (g). We concur with the trial court, and affirm the judgment.

On September 3, 1996, Cortez's bail, secured by a $25,000 bond posted by Amwest Surety Insurance Company, was forfeited when Cortez failed to appear in court. After fleeing the jurisdiction, Cortez was located in Mexico

---

[1]Further statutory references are to this code.

by Glenn Parness, Cortez's friend and the bail bond indemnitor, and Maria Castro, a private investigator employed by the bail agent. Cortez refused to return to the United States for trial. However, he agreed to accompany Parness and Castro to a notary public, to permit them to obtain a declaration verifying Cortez's identity and location in Jalisco, Mexico for purposes of exonerating the bail bond pursuant to section 1305, subdivision (g). A notary public took Cortez's statement, verifying his identity.[2]

Section 1305, subdivision (g) provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

On January 28, 1997, the People informed the trial court that they would attempt to extradite Cortez from Mexico. Less than six months later, on May 12, 1997, the trial court considered a motion by appellant that Cortez be extradited from Mexico or, in the alternative, that the forfeiture be vacated under section 1305, subdivision (g).

At the hearing on the motion, the trial court was presented with the Spanish language declaration of the Mexican notary public in support of appellant's motion to exonerate the bail bond. The court was informed that the Mexican notary was also an attorney. Appellant argued below that since the affidavit was signed by a notary/attorney, it was sufficient to meet the requirements of section 1305, subdivision (g). The trial court rejected this argument, stating: "It appears to me that if the Legislature had felt it would be satisfactory to have an attorney supply the affidavit discussed in 1305(g), they could have easily said so, but it appears clear that the Legislature envisioned the defendant being taken before a local law enforcement officer within whatever jurisdiction that defendant is and that law enforcement officer be the one to supply the affidavits. For that reason only, the motion is denied." Appellant challenges this holding on appeal.

---

[2]Castro subsequently attempted to have Mexican authorities arrest Cortez, but was informed that he could not be arrested unless an extradition warrant had been properly secured. She was further informed, by the Office of the Director General of the Mexican Attorney General, that a police officer in the State of Jalisco could not sign a declaration or go to a location to identify an American bailee without a crime having been committed in Mexico. She was instructed that such a declaration could only be secured through the services of a notary public.

 The only question at issue before the court below was whether the declaration of a Mexican notary public/attorney-at-law satisfied the requirement of section 1305, subdivision (g) that the defendant be positively identified by a law enforcement officer in an affidavit signed under penalty of perjury.[3] And that court found that a notary public is not a "law enforcement officer" as required by the statute.

In 1995, the Legislature amended section 1305 to add subdivision (g), which according to its supporters would correct the "recurring problem" of a bailee being located by a bail agent in another jurisdiction, but the local police refusing to take the defendant into custody unless California elected to extradite. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1245 (1995-1996 Reg. Sess.) p. 5.) To correct this problem, the Legislature established the procedure in subdivision (g), by which the defendant may be temporarily detained by the bail agent and taken before a "law enforcement officer." (§ 1305, subd. (g).) The statute itself does not provide a definition of "law enforcement officer" as that phrase is used in the subdivision. However, the legislative history consistently shows that a "law enforcement officer" was designated throughout the legislative analysis as an "authorized peace officer." (Sen. Com. on Crim. Proc., Legis. Hist. of Sen. Bill No. 1245 (1995-1996 Reg. Sess.) p. 3; Sen. Com. on Crim. Proc., 3d reading of Sen. Bill No. 1245 (1995-1996 Reg. Sess.) p. 2; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1245 (1995-1996 Reg. Sess.) p. 2.)

An "authorized peace officer" would be any law enforcement officer found in section 830 et seq. "Section 830 provides, 'Any person who comes within the provision of this chapter and who otherwise meets all standards imposed by law on a peace officer is a peace officer, and notwithstanding any other provision of law, no person other than those designated in this chapter [4.5] is a peace officer. The restriction of peace officer functions of any public officer or employee shall not affect his or her status for purposes of retirement.' [¶] Section 830.1 identifies traditional law enforcement officers, county sheriffs, city or district police, and marshals as peace officers. [¶] Thereafter, sections have been added which include as peace officers employees of such departments and agencies as the Department of Alcoholic Beverage Control, the Department of Parks and Recreation, the Department of Forestry, Municipal Water Districts, and even messengers of the Treasurer's Office." (*Sims* v. *Superior Court* (1993) 18 Cal.App.4th 463, 469, fn. 3 [22 Cal.Rptr.2d 256].)

---

[3]Although the foreign language declaration was not accompanied by an English translation certified by a qualified interpreter as required by California Rules of Court, rule 311(e) and Los Angeles Superior Court Rules, rule 9.3(a), the trial court accepted counsel's representations as to its content. We therefore do not address the issue of the admissibility of a foreign language document that is not accompanied by a certified translation.

In construing the statutory language, we endeavor to determine the intent of the Legislature so as to effectuate the purpose of the law. (*People* v. *Ranger Ins. Co.* (1998) 61 Cal.App.4th 812, 818 [71 Cal.Rptr.2d 806].) " 'To ascertain such intent, courts turn first to the words of the statute itself [citation], and seek to give the words employed by the Legislature their usual and ordinary meaning. [Citation.]' " (*People* v. *Amwest Surety Ins. Co.* (1997) 56 Cal.App.4th 915, 919 [66 Cal.Rptr.2d 29].) ▮ The usual and ordinary meaning of "law enforcement officer" includes neither a notary public nor an attorney. We now turn to cases which have discussed the meaning of the phrase "law enforcement officer," albeit in the context of a different statute.

In *Martin* v. *Superior Court* (1991) 230 Cal.App.3d 1192 [281 Cal.Rptr. 682], the court considered whether or not an arson investigator who was a "peace officer" under section 830.37, subdivisions (a) and (b) fell within the definition of a "law enforcement officer" under section 872, subdivision (b). Section 872, one of the statutory provisions incorporated in Proposition 115, established that certain "law enforcement officers" could testify to hearsay statements at preliminary hearings. In *Martin*, the petitioner contended that the term "law enforcement officer" as used in section 872 was controlled by the definition of that phrase found in section 13519, the only definition of that term found in the Penal Code. The court rejected this argument, finding no support for the contention that the Legislature intended section 13519, which deals with officer training in domestic violence, to provide the definitive meaning of the phrase "law enforcement officer" as it is used throughout the Penal Code. (230 Cal.App.3d at p. 1196.) Rather, the court held, the narrow definition found in section 13519 was limited to that section. The court went on to note that a "law enforcement officer" has been more broadly defined as " '[a] policeman, sheriff, deputy sheriff, constable, or other officer whose duty it is to be vigilant in discovering violations of the criminal laws and ordinances and to arrest offenders.' " (230 Cal.App.3d at p. 1197, quoting Ballentine's Law Dict. (3d ed. 1969) p. 712.) The court concluded that a peace officer as defined in section 870.37, subdivisions (a) and (b), whose primary duty is the enforcement of fire laws and/or the apprehension of persons who violate those laws, is a law enforcement officer within the meaning of Proposition 115 and section 872.

A similar issue was presented to this court in *Sims* v. *Superior Court, supra,* 18 Cal.App.4th 463, where the issue was whether or not an investigator from the Franchise Tax Board was a "law enforcement officer" for purposes of section 872. In *Sims*, the petitioner argued that a law enforcement officer was limited to " 'traditional' law enforcement officers, such as the police and sheriffs," and that the group did not include the Franchise Tax

Board investigator who had offered hearsay testimony at the preliminary hearing. In keeping with the commonsense approach of the *Martin* court, this court noted that Franchise Tax Board investigators are not traditional or statutory peace officers. However, we looked to see if the qualifications and duties of a Franchise Tax Board investigator were commensurate with those of others who have been given peace officer status by the Legislature. We noted that the nontraditional law enforcement officers which the Legislature has vested with peace officer status only receive that designation if their primary duty is to enforce the laws of a particular agency. (18 Cal.App.4th at pp. 468-469.) Because the primary duty of the Franchise Tax Board investigator was to enforce the laws administered by the Franchise Tax Board, we concluded that he was a law enforcement officer for purposes of section 872.

Thus, the courts in both *Martin* and *Sims* concluded that the key to determining whether or not an individual is a law enforcement officer is if his or her primary duty is the enforcement of the law; that is, someone who is vigilant in enforcing criminal statutes and arresting violators.

Here, appellant cites no evidence to suggest that the notary public before whom Cortez appeared had as his primary, or even as a peripheral, duty the enforcement of the law. Rather, appellant seems to argue that notaries public and attorneys as a class are reliable authenticators of facts, and therefore their declarations should be accepted in lieu of an affidavit of a law enforcement officer.[4] While we agree with appellant that the purpose of section 1305 subdivision (g) is "to provide for a genuine identification of the defendant and for verification that the defendant was in fact in a jurisdiction beyond the court[']s power," the Legislature explicitly indicated the procedure to be employed to satisfy the clear purpose of the statute: the defendant must be "temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located," and must be "positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, . . ." (§ 1305, subd. (g).) The trial court did not err in concluding that appellant failed to meet the requirements of the statute.

Appellant argues for the first time on appeal that the bail bond should have been exonerated pursuant to subdivision (f) of section 1305. That

---

[4]Appellant also argues that, because the Mexican law enforcement officers could not or would not provide an affidavit that would comport with requirements of subdivision (g) of section 1305, it should be relieved of the requirement that the defendant appear before a law enforcement officer. Thus, appellant states: "The bail agent did everything possible under the circumstances, with the exception of actually having the defendant arrested in Mexico, to comply with the intent and spirit of P.C. 1305(g) . . . ." If the Legislature has enacted a remedial statute that is difficult if not impossible for its intended beneficiaries to utilize, appellant's remedy lies with the Legislature, not with the courts.

subdivision provides as follows: "In all cases where a defendant is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." The record provides no evidence that Cortez was "in custody beyond the jurisdiction of the court that ordered the bail forfeited." Indeed, the evidence before the trial court was to the contrary. Consequently, there is no basis for affording appellant relief pursuant to section 1305, subdivision (f).

DISPOSITION

The judgment is affirmed.

Turner, P. J., and Godoy Perez, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 12, 1999.