[No. F062158. Fifth Dist. Apr. 2, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
WESTERN INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Robert W. Hicks & Associates, Robert W. Hicks; and Robert Tomlin White for Defendant and Appellant.

Kathleen Bales-Lange, County Counsel, Elizabeth A. Klotz and Barbara B. Grunwald, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**LEVY, J.**—In this bail forfeiture action, appellant, Western Insurance Company (Western), challenges the trial court's order denying its motion to vacate the forfeiture and exonerate bail. According to Western, the appearance period for the criminal defendant who fled to India should have been equitably tolled during the extradition process.

As discussed below, equitable tolling is not applicable to the bail bond forfeiture statutory scheme. Therefore, the judgment will be affirmed.

### BACKGROUND

Western, through its agent, Aladdin Bail Bonds (Aladdin), posted a $50,000 bond to secure the release of criminal defendant, Jasbir Riar. Riar failed to appear for a hearing on November 25, 2009. The trial court declared the bond forfeited and issued a bench warrant for Riar.

Notice of forfeiture of the bail bond was mailed to Western and Aladdin informing them that unless the order of forfeiture was set aside within 180 days, summary judgment would be entered pursuant to Penal Code[1] section

---

[1] All further statutory references are to the Penal Code.

1306. Upon Western's motion, the 180-day bail bond forfeiture period was extended to November 24, 2010.

Riar was found in India by Western's bail agent on September 25, 2010. The bail agent temporarily detained Riar in the presence of local law enforcement and Riar was positively identified. On September 29, 2010, Western informed respondent, the People of the State of California, of Riar's location and requested a response, by way of a form letter, as to whether the People would seek to extradite Riar.

On October 29, 2010, Western filed a motion to vacate the forfeiture and exonerate the bail bond. Western based this motion on its not having received a response from the People regarding extradition. Under section 1305, subdivision (g), if the prosecuting agency elects not to seek the extradition after being informed of the location of the defendant, the court must vacate the forfeiture and exonerate the bond.

The People opposed this motion on the ground that they had responded to Western and were interested in pursuing extradition. Thereafter, the People informed Western that they were proceeding through the National Crime Information Center.

At the hearing on Western's motion held on December 15, 2010, the trial court expressed its concern regarding whether the prosecutor's mere checking of a box on the form letter regarding the intent to extradite defendant, without demonstrating any additional effort, was sufficient to prevent exoneration of the bond. Thus, the trial court continued the matter to permit Western to provide additional authority.

Western served a deposition subpoena on the People seeking information regarding the extradition efforts. In response, the People informed Western that they were beginning the process of requesting an Interpol Red Notice.

Thereafter, the People moved to quash the subpoena on the ground that the information sought was confidential as part of an ongoing criminal investigation. In support of this motion, the deputy district attorney prosecuting the case submitted a declaration explaining that all extraditions from India must be processed through diplomatic channels. The deputy district attorney further stated that the Interpol "Red Application" had been completed and they were waiting for a response from the State Department.

On January 19, 2011, the trial court held the continued hearing on Western's motion to vacate the forfeiture and exonerate the bail bond. The court found that the People genuinely intended to extradite defendant and had

acted in good faith to accomplish this goal. The court further noted that a significant time period in excess of one year had passed. The court denied Western's motion and entered summary judgment. The court did not rule on the People's motion to quash.

## DISCUSSION

 When a criminal defendant for whom a bail bond has been posted fails to appear, the trial court must declare the bond forfeited in open court. (§ 1305, subd. (a).) Thereafter, the surety that posted the bond has a statutory "appearance" period in which to either produce the accused in court and have the forfeiture set aside or demonstrate other circumstances requiring the court to vacate the forfeiture. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657 [16 Cal.Rptr.3d 76, 93 P.3d 1020].)

For a bond exceeding $400, this appearance period is 185 days, the 180-day standard period plus five days for mailing of the required notice of the forfeiture to the surety. (§ 1305, subds. (b)–(c).) However, on the surety's motion, the court may, upon a hearing and a showing of good cause, extend that period to a time not exceeding 180 days. (§ 1305.4.) No additional extensions of this bond exoneration period are statutorily authorized. (*People v. Seneca Ins. Co.* (2010) 189 Cal.App.4th 1075, 1079 [117 Cal.Rptr.3d 217] (*Seneca*).) If the forfeiture is not set aside by the end of the appearance period, the trial court must enter summary judgment against the surety. (§ 1306, subd. (a).)

 There is one way to statutorily toll the bond exoneration period. Under section 1305, subdivision (e), the exoneration period is tolled during the period the defendant is temporarily disabled by reason of illness, insanity, or detention by military or civil authorities. The defendant must be unable to appear in court based on the temporary disability and this absence must be without "connivance of the bail." (*Id.*, subd. (e)(3).)

In the factual circumstance presented here, i.e., the criminal defendant has fled to a foreign country but is not in custody, section 1305, subdivision (g), applies. That section provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, *and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant*, the court shall vacate the forfeiture and exonerate the bond . . . ." (Italics added.)

In *Seneca*, the court was called upon to interpret section 1305, subdivision (g), in a similar situation. There, the surety posted a bail bond and, upon the defendant's release, the defendant fled to South Korea. Approximately eight months before the end of the appearance period the bail agent located the defendant, had him properly identified, and notified the prosecutor. The prosecutor elected to extradite the defendant but took no steps to do so. The surety moved to vacate the forfeiture and exonerate bail on the ground that, by not pursuing extradition in a timely fashion, the prosecutor effectively elected to not seek extradition. Alternatively, the surety moved to toll the statutory deadline for exoneration of the bail. The trial court denied the surety's motion to vacate the forfeiture or to allow equitable tolling of the exoneration period. (*Seneca, supra*, 189 Cal.App.4th at pp. 1078–1079.)

■ The *Seneca* court affirmed. In interpreting section 1305, subdivision (g), paying heed to its plain language but also acknowledging that the law disfavors forfeitures of bail, the court concluded that a bail bond is not exonerated simply because the prosecutor has not completed, or even initiated, extradition of the defendant before the end of the bond exoneration period. (*Seneca, supra*, 189 Cal.App.4th at pp. 1081, 1082.) The court noted that a prosecutor could abuse section 1305, subdivision (g), by pretending to "elect" extradition, then abandoning such "election" after the bond exoneration period or intentionally delaying initiation of extradition beyond the exoneration period. (*Seneca, supra*, 189 Cal.App.4th at pp. 1082–1083.) Nevertheless, the court found no evidence of actual bad faith in the sparse record before it. Moreover, the court concluded that the statutory language did not support the surety's position. The court stated: "Exoneration of the bond is contingent on the return of the criminal defendant to face justice in California, not the initiation of the extradition process. We are loath to impose nonstatutory deadlines on prosecutors to initiate the process of extradition or to otherwise require prosecutors to pursue extraditions on a particular timetable." (*Id.* at p. 1083.)

■ Regarding tolling, the court noted that the statutory scheme did not authorize additional extensions or tolling of the bond exoneration period under the circumstances presented. The surety had already received its one-time extension of 180 days and did not qualify for statutory tolling based on a temporary disability under section 1305, subdivision (e). (*Seneca, supra*, 189 Cal.App.4th at p. 1082.) The court further explained that, except when the criminal defendant is under a " 'temporary disability,' " the statutory scheme creates a clear deadline for the period of exoneration. " 'We note, in any event, that the existing statutory scheme has been designed to avoid undue hardship for bail sureties. A surety undertakes to guarantee the defendant's timely appearance in court. If the defendant fails to appear, the surety is contractually obligated to the government in the amount of its bond.' [Citation.]" (*Id.* at p. 1083, fn. omitted.)

Western does not challenge the trial court's finding that the People acted in good faith in making the extradition election. Western states that the *Seneca* court's addition of a subjective test of prosecutorial intent is unwise and unnecessary, but does not seek reversal on this ground. Rather, Western argues that the language in *Seneca* indicating that equitable tolling is not an available option is legally incorrect. According to Western, the trial court should have been able to toll the appearance period under the equitable tolling doctrine to allow the extradition process to run its course.

 Equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations, i.e., timely notice to the defendant of the plaintiff's claims, has been satisfied. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99 [84 Cal.Rptr.3d 734, 194 P.3d 1026] (*McDonald*).) Courts have applied equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action where the defendant would not be prejudiced. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370 [2 Cal.Rptr.3d 655, 73 P.3d 517] (*Lantzy*).)

Broadly speaking, equitable tolling applies when a person has several legal remedies and, reasonably and in good faith, pursues only one. (*McDonald, supra,* 45 Cal.4th at p. 100.) Thus, for example, it may apply where administrative remedies must first be exhausted, where a first action embarked on in good faith is found to be defective for some reason, or where informal remedies are first pursued. (*Ibid.*)

However, the Legislature may explicitly preclude equitable tolling. (*Lantzy, supra,* 31 Cal.4th at p. 371.) "Moreover, equitable tolling should not apply if it is 'inconsistent with the text of the relevant statute.' . . ." (*Ibid.*)

 Here, the Legislature has spoken to a particular basis for tolling but has elected to limit the extent of tolling available. Section 1305, subdivision (e), limits tolling of the 180-day appearance period to specific instances where the defendant is temporarily disabled, i.e., illness, insanity or detention by military or civil authorities. This indicates that the Legislature intended to omit other bases for tolling the 180-day appearance period. (Cf. *Lantzy, supra,* 31 Cal.4th at p. 373.) Thus, tolling the appearance period during the extradition process is inconsistent with the statutory scheme. (Cf. *McDonald, supra,* 45 Cal.4th at p. 107, fn. 4.)

 Further, the Legislature has already provided for an extension of the appearance period upon the surety's motion. Upon a showing of good cause, the court may order an extension "not exceeding 180 days." (§ 1305.4.) Thus,

the Legislature has anticipated a surety needing additional time to secure the defendant's appearance in court and has provided a remedy. Under these circumstances, a further extension of the appearance period under the guise of equitable tolling is inappropriate. (Cf. *Williams v. City of Belvedere* (1999) 72 Cal.App.4th 84, 92–93 [84 Cal.Rptr.2d 658].) As with the appellant in *Seneca*, Western's " 'arguments would be better addressed to the Legislature.' " (*Seneca, supra*, 189 Cal.App.4th at p. 1083.)

## DISPOSITION

The judgment is affirmed. The People are awarded costs on appeal.

Wiseman, Acting P. J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 27, 2012, S202468.