Filed 4/3/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B264718 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SJ4027) |
| v. | |
| FINANCIAL CASUALTY & SURETY, INC., | |
| Defendant and Appellant. | |

APPEAL from an order and judgment of the Superior Court of Los Angeles County. Norm Shapiro and David Fields, Judges. Affirmed.

Law Office of John Rorabaugh, John M. Rorabaugh and Robert Tomlin White for Defendant and Appellant.

Mary C. Wickham, County Counsel, Ruben Baeza, Jr., Assistant County Counsel, and Joanne Nielsen, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

When a court forfeits a bail bond, the bond's surety is subsequently entitled to vacatur of that forfeiture if the defendant is later found out of state as long as (1) the defendant "is temporarily detained" by the "bail agent[] in the presence of a local law enforcement officer," (2) the local officer submits a sworn affidavit "positively identif[ying]" the defendant, (3) and "the prosecuting agency elects not to seek extradition after being informed of the location of the defendant." (Pen. Code, § 1305, subd. (g).)[1]  Can the prosecuting agency refuse to make an election—and effectively deny the surety vacatur—unless the surety also provides the agency with a photograph or fingerprints to verify the defendant's presence in the foreign jurisdiction?  We conclude the answer is "yes."  Because the surety in this case did not comply with the prosecuting agency's request and was not reasonably likely to do so in the remaining 21 days before its window to seek vacatur closed, we affirm the trial court's denial of the motion to vacate the bond and its related order granting summary judgment on the bond.

### FACTS AND PROCEDURAL BACKGROUND

In October 2013, Juan Carlos Pena Angulo (Angulo) was charged with (1) transporting and selling a controlled substance (Health & Saf. Code, § 11379, subd. (a)), (2) possessing a controlled substance for sale (*id.*, § 11378), and (3) using a false compartment with the intent to store, smuggle, or transport a controlled substance (*id.*, § 11366.8, subd. (a)).  Defendant and appellant Financial Casualty & Surety, Inc. (the surety)

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

authorized its agent to issue a $100,000 bail bond guaranteeing Angulo's court appearances.

Angulo did not appear in court on February 4, 2014. The trial court issued a "no bail" warrant for Angulo's arrest. The court also stated on the record that the bond was forfeited and mailed a copy of its forfeiture order to the surety and its agent. Pursuant to law, the order gave the surety 185 days—until August 8, 2014—to locate Angulo and produce him in court. On August 1, 2014, the surety requested an extension of time to locate Angulo. On August 25, 2014, the trial court granted the surety an extension until December 24, 2014.

On October 5, 2014, an investigator for the surety and an officer of the Fugitive Recovery Unit of the Baja California Mexico State Police stopped Angulo on the main street of the tourist center in Tijuana, Mexico. They identified him based on his booking photo and driver's license photo. The Mexican officer determined that Angulo was a Mexican national who was not wanted for any crimes in Mexico, which meant the officer could not "forcibly detain or arrest [Angulo] for questioning nor obtain fingerprints or photos." They let Angulo go. The investigator and Mexican officer executed sworn affidavits to these facts.

Over two months later, on December 8, 2014, the surety submitted the affidavits to the Los Angeles County District Attorney's Office (the prosecutor's office) and asked whether it would seek extradition.[2] Eight days later, on December 16, 2014,

---

[2] The surety asserts that the Mexican officer faxed his affidavit to the prosecutor's office on October 6, 2014. Although the officer's affidavit has a "FAX" sheet as a cover sheet, the cover sheet lists no fax number for the prosecutor's office and does not contain a data line indicating it was ever transmitted.

the prosecutor's office responded that it was "unable to make an extradition election" because it was "unable to confirm the identity of the defendant . . . because [the surety] ha[d] not provided us," as per its office policy, "with fingerprints or a photograph taken while the defendant was detained in Mexico."

On December 24, 2014, the surety filed a motion (1) seeking to vacate the bond's forfeiture and exonerate the bond, and alternatively (2) seeking until February 23, 2015, to provide a photograph or fingerprints.[3]  Further briefing followed.

At a February 2, 2015 hearing, the trial court denied the motion to vacate the forfeiture and exonerate the bond and declined to grant the surety additional time to obtain a photograph or fingerprints because Angulo had absconded more than 365 days earlier.  On February 5, 2015, the court granted summary judgment for $100,435—the amount of the bond plus costs—against the surety.

The surety filed a motion to set aside the judgment on grounds unrelated to this appeal, which the trial court denied.

The surety filed this timely appeal.

## DISCUSSION

The surety argues that the trial court erred in (1) denying its motion to vacate the forfeiture and to exonerate the bond, and (2) declining to grant a further 21-day continuance to allow it the

---

What is more, neither the cover sheet nor the affidavit requests a decision on extradition.  The surety did not request an extradition decision until its December 8, 2014 letter.

[3]    Although the motion was file stamped on December 31, 2014, the parties agree that this was in error and that the motion was actually filed on December 24, 2014.

4

opportunity to obtain Angulo's photograph or fingerprints. Both orders are appealable. (*County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 538, 542 (*Fairmont*) ["An order denying a motion to vacate or set aside a forfeiture and exonerate the bail bond is an appealable order"]; § 1305.5 [specifying to which court of appeal such orders must be directed]; *People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 39 (*Financial Casualty*) [appeal of order denying continuance of appearance period].)[4]

## I. Motion to Vacate Forfeiture and Exonerate Bond

### A. *Bail bond law, generally*

"[E]xcept for capital crimes when the facts are evident or the presumption great," a criminal defendant has a right to be "released on bail by sufficient sureties . . ." (Cal. Const., art. I, § 28, subd. (f)(3).) The most common mechanism for obtaining release is a bail bond, which rests upon two different contracts between three different parties: The surety contracts with the government to "act[] as a guarantor of the defendant's

---

[4] A surety may generally not appeal a summary judgment where, as here, it has consented in advance to the entry of summary judgment on the bond. (*People v. Hodges* (1928) 205 Cal. 476, 477-478.) However, this bar does not apply when "'the judgment was not entered in accordance with the consent given'"—that is, when the trial court did not follow the proper statutory procedures. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 664 (*American Contractors*); *Fairmont, supra,* 173 Cal.App.4th at p. 542, fn. 2.) Because the surety in this case is alleging noncompliance with section 1305, and because it is independently appealing the denial of its motion to vacate the forfeiture, this appeal is proper. (*Fairmont,* at p. 542, fn. 2.)

appearance in court under the risk of forfeiture of the bond,'"'"
and the defendant contracts with the surety to pay a premium for
the bond and to provide collateral in the event of his or her
nonappearance. (*Financial Casualty*, *supra*, 2 Cal.5th at p. 42,
quoting *American Contractors*, *supra*, 33 Cal.4th at p. 657.)

If the defendant does not appear as ordered "without
sufficient excuse," the trial court can (1) declare the bond
forfeited in open court (§ 1305, subd. (a)(1)), or, if the court "has
reason to believe that sufficient excuse may exist for the failure
to appear," (2) continue the case for a "reasonable" period of time
"to enable the defendant to appear" (§ 1305.1). Forfeiture is the
general rule. (*Financial Casualty*, *supra*, 2 Cal.5th at p. 42
["When the surety breaches [its] contract [with the government]
by failing to secure the defendant's appearance, the bond
generally must be enforced"].)

Once the bond is forfeited, the surety has 185 days—that is,
180 days plus five days for mailing (because the trial court is
required to notify the surety and bail agent of the forfeiture by
mail within 30 days of the forfeiture (§ 1305, subd. (b)(1)))—to
move to vacate the forfeiture. (§ 1305, subd. (c).) This is often
called the "appearance period." (*American Contractors*, *supra*,
33 Cal.4th at p. 658.) The surety may ask for an additional 180-
day extension of this period. (§ 1305.4.) Extensions may only be
granted for "good cause" (*ibid.*), which turns on the surety's
diligence in tracking down the defendant as well as whether
there is "a reasonable likelihood [that] the extension will result in
the defendant's apprehension." (*Financial Casualty*, *supra*,
2 Cal.5th at pp. 47-50). A court lacks the power to grant further
extensions—either as a matter of statute or through its inherent
equitable powers. (*People v. Western Ins. Co.* (2012) 204

6

Cal.App.4th 1025, 1030 (*Western*) ["No additional extensions of this bond exoneration period are statutorily authorized"]; *id.* at pp. 1032-1033 [equitable tolling unavailable].)

The surety is entitled to have the trial court vacate the bond's forfeiture and exonerate the bond if, prior to the expiration of the 185-day period and any extension thereof, it makes one of five different showings. As pertinent here,[5] the surety is entitled to relief when the defendant is found in another state or country if (1) the defendant "is temporarily detained[] by the bail agent[] in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located," (2) the defendant "is positively identified by that law enforcement officer . . . in an affidavit signed under penalty of perjury," and (3) "the prosecuting agency elects not to seek extradition after being informed of the" defendant's location. (§ 1305, subd. (g); *People v. Seneca Ins. Co.* (2010) 189 Cal.App.4th 1075, 1080 (*Seneca*) [this provision reaches defendants in "a foreign country"]). If the court vacates the forfeiture and exonerates the bond on this or any

---

[5] The surety is also entitled to relief if (1) the defendant appears in court voluntarily or is arrested (§§ 1305, subd. (c)(1), 1305.6); (2) the surety or its agent apprehend the defendant and surrender him to the custody of law enforcement (§ 1305, subd. (c)(2) [within the county where the case is located] & (3) [outside the county where the case is located]); (3) the defendant is dead or "otherwise permanently unable to appear in . . . court due to illness, insanity, or detention by military or civil authorities" "without the connivance of the bail" (*id.*, subd. (d)); or (4) the defendant is "in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the" defendant's location (*id.*, subd. (f)).

7

other statutorily permissible ground, it "shall impose a monetary payment as a condition of relief to compensate the people for the costs of returning a defendant to custody" unless such an award would not be in "the best interest of justice." (§ 1306, subd. (b).)

If the forfeiture is not vacated, the trial court must then enter summary judgment against the surety for "the amount of the bond plus costs." (§ 1306, subd. (a); *American Contractors*, *supra*, 33 Cal.4th at p. 658.) In this respect, "bail bond proceedings"—despite growing out of criminal prosecutions—"are independent from and collateral to the prosecutions and are civil in nature." (*People v. Wilcox* (1960) 53 Cal.2d 651, 654 (*Wilcox*).)

B.     *Construction of section 1305, subdivision (g)*

Because the surety in this case is attacking the trial court's ruling that the prosecutor's office had the right to insist upon the surety providing a photograph or fingerprints before electing whether to extradite Angulo, the question presented on appeal is whether section 1305, subdivision (g) precludes a prosecuting agency from adopting a policy that predicates its election whether to extradite on whether the surety provides it information beyond a sworn affidavit "positively identif[ying]" the defendant.

We review the denial of a motion to vacate a bond forfeiture and to exonerate the bond for an abuse of discretion. (*People v. Accredited Surety & Casualty Co.* (2016) 3 Cal.App.5th 1180, 1184; *Fairmont*, *supra*, 173 Cal.App.4th at p. 542.) To the extent the trial court's ruling rests on statutory interpretation, our review is de novo and we must, where feasible, strictly construe the statutory language ""in favor of the surety to avoid the harsh results of a forfeiture."" (*County of Los Angeles v. American Contractors Indemnity Co.* (2007) 152 Cal.App.4th 661, 665-666.) To the extent the court's ruling rests upon questions of fact, our

8

review is for substantial evidence. (*Fairmont*, at p. 543.) It is the surety's burden to prove the statutory prerequisites to an order vacating a bond forfeiture. (*People v. American Contractors Indemnity* (1999) 74 Cal.App.4th 1037, 1041.)

We conclude that the trial court did not err in its construction of section 1305, subdivision (g), and accordingly did not abuse its discretion in denying the surety's motion to vacate the forfeiture. Three reasons support this conclusion.

First, the plain language of section 1305, subdivision (g) predicates relief from forfeiture on a showing that "the prosecuting agency [has] elect[ed] not to seek extradition after being informed of the location of the defendant."[6] "The term elect [not only] implies a choice of options" (*County of Orange v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 795, 802 (*Ranger Ins. Co.*)), but also an affirmative selection among those options. If, as here, the prosecuting agency has yet to make that selection, there has been no election, and there is consequently no entitlement to relief. (*People v. Accredited Surety & Casualty Co.* (2004) 132 Cal.App.4th 1134, 1146-1147 [where no "determination" "on

---

**6** In full, section 1305, subdivision (g) provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

whether to extradite" "had been made, . . . no relief [is] available" under subdivision (g)]; see also *Seneca, supra*, 189 Cal.App.4th at p. 1082 ["A bail bond is not exonerated simply because the People have not completed (*or even initiated*) extradition of the defendant before the end of the bond exoneration period," italics added]; *People v. Tingcungco* (2015) 237 Cal.App.4th 249, 254 (*Tingcungco*) [same]; *People v. Lexington National Ins. Corp.* (2010) 181 Cal.App.4th 1485, 1491 [subdivision (g) "requires the exoneration of bail if the prosecutor elects not to extradite"].) This plain language is controlling. (E.g., *Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC* (2013) 221 Cal.App.4th 102, 130 ["statutory analysis begins with the plain language of the statute, and if that language is unambiguous, the inquiry ends there"].)

Second, the legislative history of section 1305 reinforces the plain language of subdivision (g). Our Legislature added subdivision (g) to section 1305 in 1995 to address a "recurring" chicken-and-egg "problem": A surety was entitled to relief if it located a defendant who happened to be "in custody" in another jurisdiction (§ 1305, subd. (f)), but not if the defendant was out of custody in that jurisdiction (and few jurisdictions would arrest a defendant, and thereby place him "in custody," absent a pending extradition request). (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1245 (1995-1996 Reg. Sess.) July 11, 1995, p. 5; *People v. Frontier Pacific Ins. Co.* (1999) 69 Cal.App.4th 1093, 1096 (*Frontier*) [so noting].) Subdivision (g) addressed this disparity in part by extending relief to sureties that locate an *out-of-custody* defendant in a foreign state or country "when the district attorney chooses not to extradite [that] defendant," thereby giving sureties a financial incentive to track down

10

defendants, whether or not they happened to be in custody. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1245 (1995-1996 Reg. Sess.) July 11, 1995, pp. 6-7; see also Assem. Com. on Public Safety, 3d reading analysis of Sen. Bill No. 1245 (1995-1996 Reg. Sess.) as amended July 15, 1995, pp. 1-2.)  The legislative history says nothing about *how* a prosecuting agency is to make its choice and nothing about *when* it must do so. Indeed, our Legislature rejected language in a 2012 bill that would have entitled a surety to relief from forfeiture if the prosecuting agency did not make "an extradition decision within a reasonable period of time after receipt of the affidavit." (Sen. Bill No. 989 (2011-2012 Reg. Sess.) as introduced Feb. 1, 2012; see also *Tingcungco, supra*, 237 Cal.App.4th at pp. 254-258 [discussing this bill].)  We hesitate to read into section 1305 constraints on the prosecuting agency's decision-making process when our Legislature has declined to do so.  (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 861-862 ["a statute cannot be interpreted to include what was specifically excluded in the drafting process"]; *People v. Hunt* (1999) 74 Cal.App.4th 939, 947-948.)

Third, courts have consistently read subdivision (g) of section 1305 as leaving the timetable and criteria for deciding whether to extradite squarely in the hands of the prosecuting agency.  (See *John v. Superior Court* (2016) 63 Cal.4th 91, 95-96 (*John*) [looking to "context"]; *In re Marriage of Davis* (2015) 61 Cal.4th 846, 852 [looking to public policy].)  Subdivision (g) does not regulate the pace with which the prosecuting agency must pursue extradition once it decides to do so (*Seneca, supra*, 189 Cal.App.4th at pp. 1082-1083), and leaves it to the agency whether to agree to toll the appearance period while an extradition request is pending (§ 1305, subd. (h) [requiring an

11

"agree[ment]"; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 989 (2011-2012 Reg. Sess.) as amended May 17, 2012, at pp. 4-5 [the "prosecutor's decision . . . whether the 180-day period should be extended is . . . final and . . . not appealable"]). Subdivision (g) also does not obligate the prosecuting agency to decide whether to extradite by a certain deadline. (*Tingcungco, supra*, 237 Cal.App.4th at pp. 256-259.) And subdivision (g) does not require the prosecuting agency to decide whether to extradite when the defendant is in a foreign country with which there is no extradition treaty. (E.g., *Fairmont, supra*, 173 Cal.App.4th at pp. 544-545; *Ranger Ins. Co., supra*, 61 Cal.App.4th at pp. 802-805; *People v. Lexington National Ins. Co.* (2010) 189 Cal.App.4th 1242, 1247-1249 (*Lexington*).)

This deference to prosecutorial decision-making exists notwithstanding the fact that the end result will be the forfeiture of the bond. Although "equity abhors a forfeiture," particularly when the brunt of that forfeiture falls upon the "family members and friends who have pledged their homes and other financial assets to the [sureties] to secure the defendant's release" (*People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906; *County of Los Angeles v. American Contractors Indemnity Co., supra*, 152 Cal.App.4th at pp. 665-666), the above-described decisions have placed greater weight on the plain language of subdivision (g) and the competing policy it embodies—namely, that "[t]he object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court" (*Wilcox, supra*, 53 Cal.2d at pp. 656-657; *American Contractors, supra*, 33 Cal.4th at p. 657) and that "'[t]he escape of [the] defendant is the business risk of [the] bail surety [and] is

12

precisely the situation which [the] surety guarantees against'" (*Ranger Ins. Co.*, *supra*, 61 Cal.App.4th at p. 805, fn. 6).

To be sure, subdivision (g) places some limits on the prosecuting agency's conduct with regard to extradition. A prosecuting agency will be held accountable—and the bond will not be forfeited—when the prosecuting agency has made a mistake in processing an extradition request. (*People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791, 798.) And, more relevant here, a prosecuting agency cannot in "actual bad faith" agree to extradite and then drag its feet in doing so as a means of denying the surety relief from forfeiture. (*Western*, *supra*, 204 Cal.App.4th at p. 1031; *Seneca*, *supra*, 189 Cal.App.4th at pp. 1082-1083.) A similar limitation undoubtedly constrains a prosecuting agency's predicate decision whether to extradite in the first place, and to what information it requires in order to make that decision. But there is no evidence that the prosecutor's office in this case has acted in actual bad faith. To the contrary, there is substantial evidence to support a finding that the office's requirement that a request for an extradition decision be accompanied by a photograph or fingerprints is part of its longstanding policy, that this policy mirrors the policies followed by other prosecutor's offices, and that requiring additional proof of the defendant's presence in the country to which an expensive extradition request packet is to be submitted is reasonable.

The surety levels four challenges at this analysis.

First, the surety contends that upholding a prosecuting agency's insistence upon additional documentation over and above a sworn affidavit attesting to a "positive[] identifi[cation]" of the absconding defendant effectively—and impermissibly—

13

engrafts new requirements onto subdivision (g) and thereby violates the separation of powers by empowering the executive branch to amend a statute enacted by the legislative branch. The surety is correct that the executive, just like the judiciary, may interpret statutes but may not rewrite them by engrafting new requirements onto them. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 59; see also *County of Los Angeles v. American Contractors Indemnity Co.*, *supra*, 152 Cal.App.4th at pp. 666-668 [declining to add requirement that affidavit under subdivision (g) be certified as authentic in the foreign country].)

However, the prosecutor's office's insistence that a surety provide a photograph or fingerprints does not impermissibly amend subdivision (g). That subdivision lays out three prerequisites to the vacatur for a defendant "not in custody" in a foreign jurisdiction: (1) that the defendant be "temporarily detained[] by the bail agent[] in the presence of a local law enforcement officer"; (2) that the local officer in a sworn affidavit "positively identif[y]" the defendant; and (3) that the "prosecuting agency elect[] not to seek extradition after being informed of the location of the defendant." (§ 1305, subd. (g).) The surety urges that we construe the second requirement to limit the third—that is, that the prosecuting agency *must* elect whether to seek extradition *solely* on the basis of the affidavit showing a positive identification. We reject this argument. It is inconsistent with subdivision (g)'s plain language, which on its face erects three separate and independent requirements.

The surety's argument also leads to an absurd result— namely, that the prosecuting agency's decision becomes invalid if the agency (quite reasonably) says it needs corroborative

14

evidence, but its decision remains valid if the agency says nothing. Creating an incentive for public agencies to play hide the ball is, in our view, an absurd result. (*John*, *supra*, 63 Cal.4th at p. 96.)

Second, the surety asserts that obtaining the defendant's photograph or fingerprints when he is in a foreign country is often impossible, which effectively empowers the prosecuting agency to make it impossible for a surety to satisfy the requirements of subdivision (g) of section 1305.[7] We reject this argument. Although police in the United States may not fingerprint a person without a probable cause-based arrest (see *Hayes v. Florida* (1985) 470 U.S. 811, 814-815), obtaining a defendant's photograph is not impossible, at least in the United States, because a person may be photographed by law enforcement while he or she is in public (*People v. Maury* (2003) 30 Cal.4th 342, 385 ["police . . . photographing of defendant . . . is not a subject of Fourth Amendment protection since defendant knowingly exposed his whereabouts in public"]). The surety submitted the affidavits from its investigator and the Mexican officer indicating that they could not detain Angulo once they had verified he was a Mexican national with no pending warrants in Mexico, but they were able to detain him *prior* to that verification, and they do not explain why it was impermissible to photograph Angulo at that time.

_____

[7] We clarify that the prosecutor's office in this case was requiring a photograph *or* fingerprints, not *both*. Although the office in its affidavit opposing the surety's motion to vacate the forfeiture said it wanted both, the office had previously informed the surety and, importantly, later argued to the trial court that it only needed one or the other.

15

Impossibility of extradition is not a defense in any event. As noted above, a surety is not entitled to vacatur of a forfeited bond when the defendant flees to a country without an extradition treaty. (*Fairmont, supra*, 173 Cal.App.4th at pp. 544-545; *Ranger Ins. Co., supra*, 61 Cal.App.4th at pp. 802-805; *Lexington*, 189 Cal.App.4th at pp. 1247-1249.) Assuredly, the alleged impossibility here is due to a requirement of the prosecuting agency rather than the absence of an extradition treaty. But that is of no consequence, even under the contract doctrine of impossibility (Civ. Code, § 1511) that the surety in this case invokes. That doctrine, courts have held, does not entitle a surety to relief even when the impossibility of obtaining relief is due to the prosecuting agency's decision-making process regarding extradition. (*Tingcungco, supra*, 237 Cal.App.4th at pp. 252-253, 258 [surety submitted information to prosecuting agency seeking extradition only two weeks before expiration of appearance period; impossibility of deciding whether to extradite within that time frame did not warrant extension of appearance period]; cf. *Ninety Nine Investments, Ltd. v. Overseas Courier Service (Singapore) Private, Ltd.* (2003) 113 Cal.App.4th 1118, 1127 [party's noncompliance with its contractual obligations precludes relief for breach of contract].)

Third, the surety argues that allowing prosecuting agencies to require more than an affidavit undermines the public policies underlying subdivision (g) of section 1305. The surety notes, and as we observe above, our Legislature enacted subdivision (g) as a means of creating an economic incentive for sureties to track down absconding defendants in foreign countries, whether or not those defendants were in custody. (See *County of Los Angeles v. American Contractors Indemnity Co., supra*, 152 Cal.App.4th

16

at pp. 664-665; *Frontier, supra*, 69 Cal.App.4th at p. 1096.) What is more, the surety contends, the costs prosecuting agencies incur in extraditing a defendant can be recouped. (§ 1306, subd. (b).) The surety is correct that allowing prosecuting agencies to require proof of a defendant's presence in a foreign country beyond an affidavit could result in fewer extradition decisions and hence fewer bond exonerations. However, the economic-incentive justification for subdivision (g) is not a trump card; the cases that have refused to interfere with the prosecuting agency's decision-making process have recognized the potential harm to this justification but found it not to be controlling. (E.g., *Tingcungco, supra*, 237 Cal.App.4th at p. 258.) We do the same.

The surety relatedly argues that section 1305 erects a carefully crafted system designed to protect the interests of sureties insofar as a surety is entitled to a postponement of the appearance period if the prosecuting agency elects to extradite and entitled to exoneration of the bond if the agency elects not to extradite. Granting the agency the power *not to decide*, the surety reasons, places a surety in a limbo that precludes exoneration and thus is at odds with the rest of the system. We reject this argument because section 1305 does not set up the surety-friendly system the surety describes. As explained above, a surety is not entitled to a postponement of the appearance period once the prosecuting agency elects to extradite; instead, it is entirely up to the agency whether to agree to a postponement. (§ 1305, subd. (h).) And there are numerous other situations where the surety cannot recover despite its best efforts, such as when there is no extradition treaty (e.g., *Fairmont, supra*, 173 Cal.App.4th at pp. 544-545) or when it makes its request for

17

a decision on extradition too close to the end of the appearance period (*Tingcungco*, *supra*, 237 Cal.App.4th at pp. 256-259). Denying the surety relief because it does not comply with a prosecuting agency's reasonable requirements for making extradition decisions is entirely consistent with the system that section 1305 actually erects.

Lastly, the surety contends that the prosecutor's office in this case does not really need a photograph or fingerprints corroborating the defendant's presence in a foreign jurisdiction in order to elect whether to extradite him. In the surety's view, the office can instead use a multistep process: It can use the affidavit to obtain a provisional arrest warrant; use the provisional warrant to arrest the defendant and obtain his fingerprints or photograph; then use the fingerprints or photograph to make an extradition request. To the extent the surety is arguing that the prosecutor's office is proceeding in actual bad faith, we reject that argument for the reasons explained above. Moreover, the fact that a more cumbersome and potentially less effective alternative mechanism exists does not mean the prosecutor's office's decision to forego that mechanism is made in actual bad faith.

To the extent the surety is attacking the factual necessity for a photograph or fingerprints, we conclude that substantial evidence supports a finding that additional corroboration of the defendant's location is necessary. The office's extradition expert stated as much. The surety offered a contrary expert opinion, but in reviewing factual findings for substantial evidence, we resolve all evidentiary conflicts in favor of the ruling below (*Bristol-Myers Squibb Co. v. Superior Court* (2016) 1 Cal.5th 783, 792). The surety also asserts that prosecutors often do not require fingerprints or a photograph before filing charges, but this

18

ignores that most of those charges are not filed against persons located in foreign countries for which extradition is required. The surety further argues that the affidavit already establishes that the defendant is located in the foreign country, but this ignores that what is necessary to satisfy the second element of subdivision (g) of section 1305 and what is necessary to justify and to document an extradition request are not necessarily the same. The surety lastly asserts that the photograph or fingerprints would themselves need to be authenticated by the same people whose sworn affidavits the prosecutor's office is looking to corroborate, but this ignores that a photograph or fingerprints may convey additional details (such as the background of the photograph or the form on which the fingerprints are taken) that further corroborate the authentication by affidavit.

For all these reasons, we hold that a surety is not entitled to vacatur of a bond's forfeiture under subdivision (g) of section 1305 when the prosecuting agency has not yet "elect[ed] not to seek extradition," even if the agency's refusal to elect is based upon its requirement that the surety provide a defendant's fingerprints or photograph in addition to the sworn affidavit "positively identif[ying]" the defendant otherwise required by subdivision (g).[8]

---

[8] In light of this holding, we need not reach the prosecutor's office's further arguments that Angulo was never "detained," that he was not detained "by the bail agent" (but was detained instead by the local law enforcement officer), and that the Mexican officer was operating outside his territorial jurisdiction when he detained Angulo in Tijuana.

## II.  Further Extension of Appearance Period

As noted above, the initial 185-day appearance period in which a surety can seek to vacate a forfeited bond may be extended for "good cause."  (§ 1305.4.)  If the trial court finds "good cause," it "may order the period extended to a time not exceeding 180 days *from its order*."  (*Ibid.*, italics added.)  When a court initially grants an extension for less than 180 days, it may grant a second extension as long as that extension does not go beyond 180 days from the date of its first extension order.  (*Financial Casualty*, *supra*, 2 Cal.5th at pp. 46-47.)  This is true, even if that second extension's end date is more than 365 days from the date the bond was initially forfeited.  That is because section 1305 specifically contemplates that an order extending the appearance period may be granted up to 30 days *after* the initial period has expired if a timely motion to extend is pending.  (*Id.* at p. 43, citing § 1305, subd. (j).)  We review a trial court's ruling on an extension for an abuse of discretion (*Financial Casualty*, at p. 47), bearing in mind that a court abuses its discretion when it applies the wrong legal standard (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733).

The trial court abused its discretion when it denied the extension request on the ground that 365 days had passed since the bond had been forfeited.  Some courts had followed that 365-day rule at the time the trial court made its ruling (e.g., *People v. Taylor Billingslea Bail Bonds* (1999) 74 Cal.App.4th 1193, 1199), but our Supreme Court rejected it in *Financial Casualty*.  (*Financial Casualty*, *supra*, 2 Cal.5th at pp. 44-45.)

Under the proper rule, there were still 21 days left on the clock:  The court granted the first extension on August 25, 2014; a 180-day period would have lapsed on February 23, 2015, which is

21 days after the court denied the further extension on February 2, 2015.

We may nevertheless affirm on any ground in the record because our job is to review the trial court's ruling, not its reasoning. (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12.) In this case, we affirm because there was no "good cause" to grant a further 21-day extension. A showing of "good cause," as noted above, rests upon a showing of (1) the surety's "past diligence" in tracking down the absconding defendant, and (2) a "reasonable likelihood the extension will result in the defendant's apprehension." (*Financial Casualty*, *supra*, 2 Cal.5th at pp. 47-48.) Here, the surety was not moving swiftly in its efforts to track down Angulo and to inform the prosecutor's office of those efforts: The surety did not locate Angulo until October 5, 2014, and did not request an extradition decision from the prosecutor's office until December 8—over two months later and less than two weeks before the expiration of the first extension period on December 24, 2014. What is more, even though the prosecutor's office informed the surety that it would need a contemporaneous photograph or fingerprints of Angulo on December 16, 2014, the surety had done nothing to secure that additional information by the February 2, 2015 hearing. For much the same reason, the surety did not establish a reasonable likelihood of apprehending Angulo—or, in this case, of obtaining the photograph or fingerprints—within the remaining 21 days. The surety's failure to obtain that information in the seven-plus weeks between the prosecutor's office's letter and the hearing date seems to portend a similar result even with an additional 21 days, particularly when the surety offered no other evidence to indicate it could obtain that information before the clock ran.

**DISPOSITION**

The order denying the motion to vacate and for extension of time, as well as the judgment, are affirmed.  The People are awarded costs on appeal.

**<u>CERTIFIED FOR PUBLICATION.</u>**


_____, J.
HOFFSTADT

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.*
GOODMAN

---

*       Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.