Filed 2/23/22  P. v. Escape Bail Bonds CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | B305701 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA102965) |
| v. | |
| ESCAPE BAIL BONDS, | |
| Defendant and Appellant. | |

APPEAL from an order and a judgment of the Superior Court of Los Angeles County, Victoria B. Wilson, Judge.  Affirmed.

Tahmazian Law Firm and Jilbert Tahmazian for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Adrian G. Gragas, Assistant County Counsel, and David D. Lee, Deputy County Counsel, for Plaintiff and Respondent.

————————————

Appellant Escape Bail Bonds (Escape) posted a $130,000 bond for Melikset Gasparyan who subsequently failed to appear. The trial court ordered his bail forfeited, and, after giving Escape an extension of the statutory deadline, denied Escape's motion to exonerate the bond and entered summary judgment forfeiting it.

Under Penal Code[1] section 1305, subdivision (g), a bail agency can seek exoneration of a forfeited bail bond if (1) its bail agent temporarily detains the fugitive defendant in the presence of a local law enforcement officer, (2) the officer positively identifies the defendant, (3) the bail agency informs the prosecuting agency of the defendant's location, and (4) the prosecuting agency elects not to seek extradition.

Escape attempted to meet these statutory requirements by proving that its agent had tracked Gasparyan down in Tijuana, Mexico, had facilitated his identification by a Mexican police officer and municipal court judge, and had informed the district attorney's office of Gasparyan's whereabouts.

The district attorney's office opposed Escape's motion because its internal investigation had raised questions regarding the genuineness of Escape's documentation, and had uncovered information from the U.S. Customs and Border Protection that Gasparyan had fled to Armenia from the United States just a few months before he was supposedly tracked down by the bail agent in Mexico. Not knowing where Gasparyan actually was located before the appearance period expired, the district attorney informed the trial court that it could not make an intelligent extradition decision.

---

[1] Subsequent undesignated statutory citations are to the Penal Code, unless otherwise stated.

The trial court ultimately denied Escape's motion and forfeited its bond, concluding that exoneration was precluded because the district attorney's office had not yet decided whether to extradite Gasparyan from Mexico. It also denied Escape's alternate request for additional time to investigate and subsequent motion for reconsideration.

Escape's primary argument suggests that the trial court impermissibly relied on hearsay proffered in support of the district attorney's conclusion that Escape failed to meet its burden to provide competent documentation identifying Gasparyan in Tijuana. But the trial court did not deny Escape's exoneration motion on this basis; instead, it relied on the prosecutorial election requirement set forth in section 1305 subdivision (g), which gives wide latitude to prosecuting agencies in exercising their authority to elect (or not elect) to extradite a fugitive.

When, as here, the prosecuting agency is unable to verify a defendant's location and therefore makes no affirmative choice about extradition, there has been no "election" as required by section 1305, subdivision (g). Although the agency cannot avoid making an extradition decision in bad faith, Escape does not argue bad faith, has proffered no evidence to support a finding of bad faith, and has not submitted legal authority placing evidentiary limitations on what the district attorney may consider in reaching its extradition decision. Accordingly, the trial court did not abuse its discretion in denying Escape's bond exoneration motion under section 1305, subdivision (g).

Escape's alternative argument with respect to its request for a continuance is also misplaced. The trial court had already granted Escape one 180-day extension for good cause. Absent an

agreement with the prosecuting agency (which was never obtained), the trial court was not authorized to grant any additional extensions.

The trial court also did not err in denying Escape's motion for reconsideration. Escape raised only one new fact or circumstance to support its motion—its belated confirmation that Gasparyan had been recently arrested and detained in Moscow. This information was disclosed one day prior to the expiration of the statutory deadline for exoneration, giving insufficient time for the prosecutor to decide whether or not to extradite Gasparyan from Russia.

For these reasons, we affirm the trial court's order and judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2018, Gasparyan was charged with one count of rape in violation of section 289, subdivision (a)(1)(A), rape of an intoxicated victim in violation of section 289, subdivision (e), and sexual battery in violation of section 243.4, subdivision (a). Bail was set at $130,000. Escape posted a bail bond through an intermediary agency, and Gasparyan was released from custody.

Until January 7, 2019, Gasparyan made regular court appearances, relying on the assistance of an Armenian translator. However, on that date Gasparyan failed to appear in court, and the court forfeited his bail. Escape was notified of Gasparyan's failure to appear three days later, commencing the appearance period. The appearance period was initially set to end on July 14, 2019. (§ 1305, subd. (b)(1) [allowing for an appearance period of 185 days following notice of the forfeiture].)

On July 2, 2019, Escape notified the district attorney's office that it had located Gasparyan in Tijuana, Mexico.

On July 11, 2019, having received no response from the district attorney's Office, Escape filed a motion to exonerate the bond, or, in the alternative, to extend the appearance period. In the attached memorandum, Escape alleged that its bail agent, Rouben Mousheghian, tracked Gasparyan down in Tijuana.

More particularly, Mousheghian claimed that on March 25, 2019, he had met Gasparyan at a local restaurant and unsuccessfully attempted to persuade him to return to California. The next day, Mousheghian was purportedly able to convince Gasparyan to accompany him to a local police station to be identified. The pair allegedly appeared before a municipal court judge, the Honorable Omar Antonio Galvan Rivera, who instructed a local police officer, Arcadio Hernandez Sandoval, to verify Gasparyan's identity.

After receiving Gasparyan's identification papers, Sandoval allegedly confirmed his identity. Judge Rivera and Sandoval then supposedly signed statements confirming Gasparyan's identity, took his fingerprints, and, finding no outstanding warrants in their system, released him. Escape submitted these signed statements, along with fingerprints and photographs taken of Gasparyan, to the district attorney's office.

On August 2, 2019, the district attorney filed an opposition to Escape's exoneration motion. The motion explained that the district attorney's office initiated a review of Escape's documents. Detective Joe Bahena enlisted a Tijuana police officer, Marco Antonio Barbarin, as the department's international liaison. When Barbarin interviewed Sandoval and Judge Rivera, neither recognized the statements they had allegedly signed verifying

5

Gasparyan's identity. Barbarin also noted that the signature on Sandoval's police identification card did not match his signature on the statement. Barbarin thus concluded that the statements were fraudulent.

Bahena also contacted U.S. Customs and Border Protection to investigate Gasparyan's location, and was told that Gasparyan had left the United States on December 20, 2018, on a flight bound for Yerevan, Armenia.

Given this information, the district attorney's office concluded that it could not rely on the information provided by Escape to locate Gasparyan. Therefore, it informed the court that it was "not able to make a decision to extradite [Gasparyan] from Mexico, and therefore extradition is infeasible."

On August 9, 2019, at the first exoneration hearing, the court granted Escape's request to toll the appearance period for an additional 180 days pursuant to section 1305.4. The appearance period was thus extended to February 5, 2020, to give Escape an opportunity to gather additional evidence in support of its motion.

On October 11, 2019, Mousheghian's supplemental declaration was filed, in which he claimed that he had returned to Tijuana and obtained new signed statements from Judge Rivera and Sandoval rebutting the prosecuting agency's assertions of fraudulence. He attached a photograph of himself with Judge Rivera, who purportedly held the new signed statement in his hands.[2]

---

[2] The photograph appears to show Judge Rivera holding a piece of paper, but no identifying marks are visible on the paper.

On October 29, 2019, Bahena's declaration was filed, wherein he stated that he had asked Barbarin to question Judge Rivera and Sandoval about their new statements. Judge Rivera allegedly denied signing the original and new statements, telling Barbarin that the document he was photographed with was a paper "regarding taking a sponsored class or course." Sandoval also denied signing the original and new statements.

On January 3, 2020, the trial court held a second bond exoneration hearing. After hearing argument, the court denied the motion to exonerate bail, explaining that "[b]ecause extradition under [section] 1305[, subdivision] (f) requires an election not to extradite . . . the bail agent is not entitled to exoneration at this point."

On February 4, 2020, Escape filed a motion for reconsideration of its motion to exonerate the bond. Again, as an alternative, Escape asked for tolling of the appearance period. Escape claimed that it was in the process of obtaining an additional supporting declaration from Judge Rivera. It also provided proof that Gasparyan had been imprisoned in Moscow, Russia as of January 24, 2020.

On March 20, 2020, the trial court denied Escape's motion for reconsideration, and ordered summary judgement in favor of the People.

Escape timely appealed.

## DISCUSSION

If a criminal defendant who has been released on bail does not appear as ordered "without sufficient excuse," the trial court can declare the defendant's bail bond forfeited. (§ 1305, subd. (a)(1).) Although forfeitures are disfavored, bail bond forfeiture cases must consider the competing policy embodied in bail

forfeiture and exoneration statutes, i.e., that "[t]he object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court." (*People v. Wilcox* (1960) 53 Cal.2d 651, 656-657; see also *People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 42 ["When the surety breaches [its] contract [with the government] by failing to secure the defendant's appearance, the bond generally must be enforced"].)

When a bond is forfeited, the surety has 185 days to move for vacation of the forfeiture and exoneration of the bond. (§ 1305, subds. (b)(1), (c).) This 185-day period is known as the "appearance period." (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 658.) The surety may request a 180-day extension of the appearance period for good cause. (§ 1305.4.)

The surety is entitled to exoneration if it makes one of five different showings, as enumerated by statute, before the appearance period expires. As relevant here, the surety is entitled to relief when the defendant is found in another state or country if (1) the defendant "is temporarily detained[ ] by the bail agent[ ] in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located," (2) the defendant "is positively identified by that law enforcement officer . . . in an affidavit signed under penalty of perjury," and (3) "the prosecuting agency elects not to seek extradition after being informed of the" defendant's location. (§ 1305, subd. (g); see *People v. Seneca Ins. Co.* (2010) 189 Cal.App.4th 1075, 1080 [the statutes reaches defendants who have fled to "a foreign country"].)

If the surety does not successfully exonerate the bond, the trial court must enter summary judgment against the surety for

"the amount of the bond plus costs." (§ 1306, subd. (a).) "In this respect, 'bail bond proceedings'—despite growing out of criminal prosecutions—'are independent from and collateral to the prosecutions and are civil in nature.'" (*People v. Financial Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 378, quoting *People v. Wilcox, supra*, 53 Cal.2d at p. 654.)

We review the denial of a motion to vacate a bond forfeiture and to exonerate the bond for an abuse of discretion. (*People v. Accredited Surety & Casualty Co.* (2016) 3 Cal.App.5th 1180, 1184.) To the extent that the trial court's ruling rests on statutory interpretation, our review is de novo. (*County of Los Angeles v. American Contractors Indemnity Co.* (2007) 152 Cal.App.4th 661, 665-666.)

## A. The Trial Court Did Not Abuse Its Discretion in Denying Escape's Motion for Exoneration of the Bond

Escape argues that the trial court impermissibly relied on hearsay proffered in support of the district attorney's conclusion that Escape had provided fraudulent documentation identifying Gasparyan in Tijuana.[3] However, the trial court did not deny Escape's exoneration motion on this basis. Instead, it noted that exoneration under section 1305, subdivision (g) "requires an

---

[3] The People argue that this argument should be forfeited by waiver, because Escape did not raise the issue of hearsay below. Although Escape's counsel did not use the word "hearsay" at the exoneration hearing, he did strenuously object to the People's reliance on "second-party" and "third-party" declarations. This objection was "sufficiently specific to encompass" the hearsay issues Escape raises on appeal. (*People v. Williams* (1988) 44 Cal.3d 883, 906.)

9

election not to extradite" by the prosecuting agency and that such an election had not been made.

Section 1305, subdivision (g) does not entitle a surety to bond exoneration unless *all* elements of the statute have been satisfied. One of those elements is the prosecuting agency's "elect[ion] not to seek extradition after being informed of the location of the defendant." (§ 1305, subd. (g).) The term " 'elect' " implies both " 'a choice of options' " and "an affirmative selection among those options." (*People v. Financial Casualty and Surety, Inc.*, *supra*, 10 Cal.App.5th at p. 379.) If the prosecuting agency does not make a decision about extradition prior to the expiration of the appearance period, "there has been no election, and there is consequently no entitlement to relief." (*Ibid.*; see also *People v. Seneca Ins. Co.*, *supra*, 189 Cal.App.4th at p. 1082 ["A bail bond is not exonerated simply because the People have not completed (or even initiated) extradition of the defendant before the end of the bond exoneration period"]; *People v. Accredited Surety & Casualty Co.* (2004) 132 Cal.App.4th 1134, 1146-1147 [relief is not available under § 1305, subd. (g) where no "determination" "on whether to extradite" "had been made"].)

The district attorney's office does not have limitless authority with regard to extradition decisions. For example, a prosecuting agency cannot delay or forego a decision to extradite "in 'actual bad faith.' " (*People v. Financial Casualty and Surety, Inc.*, *supra*, 10 Cal.App.5th at p. 381; *People v. Seneca Ins. Co.*, *supra*, 189 Cal.App.4th at pp. 1082-1083.) Escape does not argue, and has not proffered any evidence indicating, that the district attorney's office acted in bad faith. In fact, the record contains substantial evidence that the district attorney's office conducted a *good faith* investigation of the information provided by Escape to

10

determine whether Gasparyan had fled to Mexico and could be extradited therefrom.[4]

Under these circumstances, the trial court did not abuse its discretion in concluding that bail could not be exonerated because the elements of section 1305, subdivision (g) had not been met.

**B.    The Trial Court Was Not Authorized to Grant Any Further Extensions of the Appearance Period Without the Consent of the District Attorney**

Escape argues that if the trial court could not exonerate Gasparyan's bond, it should have granted Escape a continuance to gather additional information to prove its case.

As we have said, a surety may request a 180-day extension of the appearance period for good cause.  (§ 1305.4.)  When a surety seeks exoneration pursuant to section 1305, subdivision (g), it may seek an additional extension if the prosecuting agency agrees that additional time is necessary to extradite the defendant.  (§ 1305, subd. (h).)  Apart from these statutes, the trial court cannot grant further extensions, either through statutory authorization or through its inherent equitable powers. (*People v. Western Ins. Co.* (2012) 204 Cal.App.4th 1025, 1030 ["No additional extensions of this bond exoneration period are

---

[4] Escape has not provided us with any authority placing evidentiary limitations on the information that the prosecution must use in making its extradition decision.  We deem this point waived and forfeited.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'We are not bound to develop appellants' arguments for them. . . .  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived' "].)

statutorily authorized"]; *id.* at pp. 1032-1033 [equitable tolling unavailable].)

Escape had earlier requested a 180-day extension pursuant to section 1304.5, which the trial court granted on August 9, 2019, and which tolled the appearance period to February 5, 2020.  Lacking an agreement by the district attorney to a further extension for the purposes of extradition, the trial court had no power to grant Escape's request for a second continuance.

## C.     The Trial Court Did Not Abuse Its Discretion in Denying Escape's Motion for Reconsideration

Escape also challenges the denial of its motion for reconsideration.  Escape argues that it was entitled to reconsideration because its "[c]ounsel was in the process of obtaining a declaration from Judge Rivera and Officer Sandoval in Mexico showing the untruth and inaccuracy of the representations made by the [district attorney's] liaison . . . [a]nd [Gasparyan] had been found in prison in Moscow."

A motion for reconsideration must be "based upon new or different facts, circumstances, or law."  (Code Civ. Proc., § 1008, subd. (a).)  While Escape did raise one new fact—i.e., that Gasparyan had recently been located in Russia—that fact was immaterial to reconsideration of the trial court's ruling.  (See *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 214 [immaterial facts cannot support a motion for reconsideration].)

Gasparyan's new domicile in a Moscow prison shed no additional light on whether Escape was entitled to exoneration on the basis of its identification of Gasparyan in Tijuana.  Further, because Escape did not inform the district attorney's office of Gasparyan's change of address until one day prior to the

12

expiration of the extended appearance period, the prosecution could not have reasonably been expected to make an independent extradition decision on the basis of this new information. (*People v. Tingcungco* (2015) 237 Cal.App.4th 249, 258 ["compliance with [§ 1305, subd.] (g) requires the surety to locate the fugitive far enough in advance of the end of the . . . appearance period to allow the prosecutor to decide whether or not to extradite"].)

Escape's other proffered ground for reconsideration is entirely without merit. Its ongoing attempt to get yet another declaration from Judge Rivera and Officer Sandoval—from whom Escape had solicited two previous declarations contradicting the district attorney's conclusions—is nothing new. And, Escape did not provide any explanation as to why it could not secure these new declarations before the expiration of the appearance period. (*People v. Safety National Casualty Corp.* (2010) 186 Cal.App.4th 959, 974 [trial court properly denied motion for reconsideration where information provided was not " 'new or different,' " and where "[t]he surety's assertedly new facts were at all times within the surety's knowledge, discoverable with due diligence"].)

## DISPOSITION

The order denying the motion to vacate, as well as the judgment, are affirmed.  The People are awarded costs on appeal.
NOT TO BE PUBLISHED


CRANDALL, J.*


We concur:



CHANEY, J.



BENDIX, Acting P. J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.