Filed 1/11/21; Certified for Publication 1/14/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TRINITY RISK MANAGEMENT, LLC, et al., <br><br>     Cross-complainants and Appellants, <br><br>     v. <br><br> SIMPLIFIED LABOR STAFFING SOLUTIONS, INC., et al., <br><br>     Cross-defendants and Respondents. | B297176 <br><br> (Los Angeles County Super. Ct. No. BC709369) |

APPEAL from an order of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Burris & Schoenberg, Donald S. Burris and Clarissa A. Rodriguez for Cross-complainants and Appellants.

Hill, Farrer & Burrill, Clayton J. Hix and Rodney S. Lasher for Cross-defendants and Respondents.

———————————

# INTRODUCTION

Cross-complainants ask us to reverse the trial court's order granting cross-defendants' special motion to strike the defamation cause of action in the cross-complaint as a strategic lawsuit against public participation under the anti-SLAPP statute, Code of Civil Procedure section 425.16. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

Because the trial court's order granting the anti-SLAPP motion is the sole basis for cross-complainants' contentions on appeal, we recite facts pertinent only to the defamation cause of action.

A.    *Relevant Background*

Simplified Labor Staffing Solutions, Inc. and Simplified Staffing Labor Solutions, LLC (collectively Simplified) are sister entities that provide staffing services, that is, secure payroll services, insurance coverage, licenses, and corporate benefits. Ashish Wahi (Wahi) owns Simplified. Michael Dougan (Dougan) is its chief financial officer. A "major expense in their business operation" is paying for workers' compensation insurance.

Simplified initiated the underlying action against Trinity Risk Management, LLC (Trinity), affiliated entities Knight Management Group, Inc. and H.J. Knight International Insurance Agency, Inc. (collectively Knight), and other named defendants. Simplified alleged fraud-based claims related to workers' compensation insurance it had purchased from defendants who sell workers' compensation insurance to staffing companies. We hereinafter refer to Trinity, Knight and the other defendants collectively as "defendants."

B.  *Complaint and First Amended Complaint*

On June 11, 2018, Simplified filed a complaint for fraud, breach of fiduciary duty, rescission, declaratory relief, accounting, and unfair business practices.  Simplified alleged defendants "conspired to induce [Simplified] to purchase their worker's compensation insurance through them by claiming that after one year of paying surcharges on the actual premiums for the coverage they required," Simplified would then earn "steep discounts on worker's compensation coverage."  Defendants "purported to offer underwriting of insurance risk without being a licensed insurance company, and/or offered for sale insurance coverage as a broker without being a licensed broker . . .  or by means of misrepresenting the actual party they represented and the nature of the coverage being offered and without disclosing the true coverage afforded, the actual cost or the fees being charged."

On August 3, 2018, Simplified filed a first amended complaint (FAC) against defendants, and added Captive Resources, Inc. (Captive) as another named defendant.  The FAC alleged 15 causes of action—the same five causes of action from the original complaint, as well as conversion, tortious interference with contract and prospective economic advantage, and unauthorized access to computer data.

C.  *Cross-Complaint*

On August 31, 2018, defendants and Captive (cross-complainants) filed a cross-complaint against Simplified, alleging eight causes of action, including defamation.  The cross-complainants alleged Simplified and/or Wahi were approximately $2 million dollars in arrears on Simplified's workers'

3

compensation payments. Relevant to the appeal before us, cross-complainants also alleged the following:

Dougan, chief financial officer of Simplified, "took it upon himself to send a series of emails to Captive Resources representing . . . that Simplified and [Knight] were involved in a dispute over the potential lack of insurance coverage that Captive Resources was not properly providing to Simplified, and along the way sparing no expense to threaten Captive Resources, discredit and malign [Knight] and intentionally misrepresent[ed] information." According to cross-complainants, Wahi and Dougan "did not hesitate to disparage [defendants] to their providers, underwriters, and longstanding business relationships."

Cross-complainants further alleged that Wahi and Dougan made these communications "with the specific intention of adversely affecting their reputation in the community by . . . misrepresenting corporate information and making disparaging remarks about [cross-complainants] and their profitability, business practices and/or reputation in the community." Their conduct was described as "outrageous and harmful" as the statements to Captive were meant to describe the cross-complainants as "acting deceitful, unethical, and illegal, when they were not." Cross-complainants alleged this "wrongful conduct" caused harm to their reputation and character, causing them to suffer "substantial and direct and consequential damages."

In support of their contentions, cross-complainants provided emails sent from Wahi to Jeff Schultz (senior vice president of Captive) on May 30 and 31, 2018, which they allege were defamatory. Additionally, cross-complainants provided an

4

email sent from Dougan to Schultz of Captive on June 12, 2018, which they also allege was defamatory. The May emails were sent approximately two weeks before Simplified filed its initial complaint on June 11, 2018. And the June 12 email was sent one day after Simplified's initial complaint was filed.

The May 30, 2018 email from Wahi to Schultz at Captive was entitled "Documents needed ASAP." Wahi's email expressed his concerns and included a list of questions about the workers' compensation insurance policy Simplified had obtained from cross-complainants. Wahi requested documents and information "to understand how the pricing is being determined for [his] current policy." Schultz responded and stated that "this information needs to be requested from the insurance broker of record on the policy . . . or from your business partner(s) that control the policy."

The May 31, 2018 email from Wahi to Matt Lanza of Knight requested the same documents and information he had asked for from Schultz. In his email, Wahi told Matt he "did not get much help" from Schultz of Captive, and needs the documents "ASAP."

On June 12, 2018, Dougan emailed Schultz, "[f]ollowing up on . . . Wahi's attempt to receive vital information" for which Simplified has a "critical need for . . . to resolve our dispute with Knight." He requested "once again [and] in good faith" that Schultz "provide this information which you full well p[oss]ess," to enable Wahi to "address[] this dispute."

Dougan's June 12 email to Schultz continued: "As you have acknowledged, [Captive] was providing insurance to [Knight] through alleged Insurance Brokers [Knight] and [Trinity]. You have also previously indicated that you and [Captive] were aware

5

and complicit in [Knight]'s sale of insurance to [Simplified]. Your firm was instrumental in the development, methods, placement, administration and financing of the means by which [Knight] was able to sell the Insurance to Simplified. . . . For you to now say that you were only providing insurance to Knight while you were facilitating the sale of the Insurance by Knight to Simplified is not only laughable, it is contemptibly deceitful. It is our contention that you owe a duty to Simplified and by extension Mr. Wahi as to the true providers of that Insurance . . . . I[f] you are either refusing to provide this information or are neglectfully ignoring our demands for you to provide this information then you are violating that duty." Dougan concluded his email to Schultz by stating this is the "final time" they are asking Schultz/Captive "to provide this information before you leave Mr. Wahi no alternative to seek other means to obtain it."

Schultz responded that same day, telling Dougan that his "assumptions and accusations pertaining to [Captive] are completely misguided and false." He said these "accusations shows the lack of knowledge and ignorance on your part and your refusal to acknowledge the facts of the situation." Schultz qualified some of Dougan's statements in the prior email as "completely false" and "inflammatory." Schultz stated he "will be forced to cease communications" if Dougan "continue[s] to choose to ignore the facts and circumstances."

D.    *Second Amended Complaint*

On October 2, 2018, Simplified filed a second amended complaint (SAC) against all cross-complainants, repeating its previous causes of actions and adding a claim for misappropriation of trade secrets.

6

E.     *Special Motion to Strike Cross-Complainants' Defamation Cause of Action and Voluntary Dismissal of the Cross-Complaint*

On October 22, 2018, Simplified filed a special motion to strike the defamation cause of action from the August 31, 2018 cross-complaint as a strategic lawsuit against public participation under the anti-SLAPP statute, citing Code of Civil Procedure[1] section 425.16, subdivisions (b)(1), (e)(1), and (e)(2). Simplified requested $24,175 in attorney fees, should it prevail on its anti-SLAPP motion.

On October 29, 2018, one week after the anti-SLAPP motion was filed, Trinity filed a request for dismissal of the cross-complaint without prejudice. The cross-complaint was dismissed the same day.

F.     *Trial Court's Ruling*

On February 22, 2019, the trial court granted Simplified's special motion to strike the cross-complaint's defamation cause of action. The court found the filing of the SAC and the dismissal of the cross-complaint did not render the anti-SLAPP motion moot. As to the first prong, the court found Simplified had met its burden to show the pre-litigation and post-litigation email communications come within the scope of the anti-SLAPP motion. As to the second prong, the court found the litigation privilege and common interest privilege precluded the defamation cause of action; the court thus did not reach whether

---

[1]     Further undesignated statutory references are to the Code of Civil Procedure.

7

cross-complainants demonstrated a probability of success on the merits of the defamation claim.

As the prevailing party, Simplified was awarded $24,175 in attorney fees—the entire amount Simplified had requested.

Cross-complainants timely appealed.

## DISCUSSION

A. *Standard of Review*

We review a trial court's ruling on a special motion to strike pursuant to section 425.16 under the de novo standard. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) "In other words, we employ the same two-pronged procedure as the trial court in determining whether the anti-SLAPP motion was properly granted." (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1652.)

As always, "our job is to review the trial court's ruling, not its reasoning." (*People v. Financial Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 386.) We consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) In considering the pleadings and declarations, we do not make credibility determinations or compare the weight of the evidence; instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

8

B.  *Applicable Law*

Section 425.16 provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)  An " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' " is defined in section 425.16 to include, in relevant part:  "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id.*, subd. (e).)

The Legislature enacted section 425.16 to prevent and deter "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).)  Thus, the purpose of the anti-SLAPP law is "not [to] insulate defendants from *any* liability for claims arising from the protected rights of petition or speech.  It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

When a party moves to strike a cause of action (or portion thereof) under the anti-SLAPP law, a trial court evaluates the special motion to strike by implementing a two-prong test: (1) has the moving party "made a threshold showing that the challenged cause of action arises from protected activity" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*)); and, if it has, (2) has the non-moving party demonstrated that the challenged cause of action has " 'minimal merit' " by making "a prima facie factual showing sufficient to sustain" a judgment in its favor? (*Baral*, *supra*, 1 Cal.5th at pp. 384–385; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 93–94; see also § 425.16, subd. (b)(1)). Thus, after the first prong is satisfied by the moving party, "the burden [then] shifts to the [non-moving party] to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral*, at p. 396.)

C.     *The SAC Did Not Render the Anti-SLAPP Motion Moot*

On appeal, cross-complainants contend Simplified's filing of the SAC superseded and caused the FAC to "cease to have effect as a pleading or basis of judgment." They believe this caused the cross-complaint to the FAC to also suffer "the same immediate lack of effect as a pleading by nature of its dependency on the FAC."

Cross-complainants are mistaken. Our state Supreme Court has stated: "[N]o sound reason appears for treating a cause of action initiated by a cross-pleading as only an integral part of that cause initiated by the complaint." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 51.) "[A] cross-pleading creates an action distinct and separate from an initial pleading. Dismissal of the complaint, for instance, does not affect

10

the independent existence of the cross-complaint or counterclaim." (*Id*. at p. 52.)  Thus, Simplified's filing of the SAC does not render the cross-complaint null; the cross-complaint is a separate action that is not affected by Simplified's amendment or dismissal of its FAC.  The anti-SLAPP motion to strike the cross-complainants' defamation cause of action is not rendered moot by the filing of the SAC.

D.      *Prong 1*: *Arising from Protected Activity*

Cross-complainants next contend Simplified has failed to shoulder its initial burden to show that the defamation cause of action arose from protected activity.  (*Park*, *supra*, 2 Cal.5th at p. 1061.)

Section 425.16, subdivision (a) itself provides that it "shall be construed broadly."  The wording of the statute protects the right of litigants to the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.  (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1479.)

Plainly read, section 425.16 encompasses any cause of action against a person arising from any statement or writing made in, or in connection with, an issue under consideration or review by, an official proceeding or body.  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113 (*Briggs*).)  "Statements made before an 'official proceeding' or in connection with an issue under consideration or review by a . . . judicial body . . . are not limited to statements made after the commencement of such a proceeding."  (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 886–887.)  Statements made "in anticipation of a court action" may be entitled to protection under the anti-SLAPP statute.  (*Id*. at

11

p. 887.) " '[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege . . . [,] such statements are equally entitled to the benefits of section 425.16.' " (*Briggs*, at p. 1115.)

A prelitigation communication is privileged only if it "relates to litigation that is contemplated in good faith and under serious consideration." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 (*Action Apartment*); see *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.)

Here, the May 30 and 31, 2018 emails Wahi sent to Schultz of Captive were communications made prior to Simplified's filing of its original complaint on June 11, 2018. Wahi actually copied Simplified's attorney in his May 31, 2018 follow-up email to Schultz. Our independent review of the contents of the email persuades us that Wahi's email asking for documents and posing questions about the workers' compensation insurance policy are communications made in preparation for or in anticipation of litigation. The content of the communication is related to the ongoing issues between Simplified and cross-complainants. It is essentially a discovery request, but as the request for documentation was made prior to the filing of any civil complaint, it operated as an informal request for information and documents. Approximately 11 days after sending the email, Simplified filed the complaint.

Further, the emails were sent to Captive, who was added as a named defendant in Simplified's FAC filed August 3, 2018.

12

Thus, the May 30 and 31, 2018 emails from Wahi were " 'communications preparatory to or in anticipation of the bringing of an action' " (*Briggs*, *supra*, 19 Cal.4th at p. 1115), and as such, are acts in furtherance of its constitutional right of petition and are protected activity for purposes of the anti-SLAPP statute.

The third email at issue is Dougan's June 12, 2018 email to Schultz of Captive. When this was sent Simplified had already filed its original complaint against defendants Trinity and Knight. Dougan actually copied Simplified's counsel in its email to Schultz. Dougan's email specified he was writing to follow up on "Wahi's attempt to receive vital information" for which Simplified has a "critical need for . . . to resolve our dispute with Knight." Dougan's email contained allegations that Captive "was instrumental in the development . . . and financing of the means by which [Knight] was able to sell the Insurance to Simplified." Dougan concluded his email by stating Captive had a "duty" to provide the information, and if they continued to refuse, Simplified would have "no alternative to seek other means to obtain it."

Based on the foregoing, we conclude Dougan's June 12, 2018 email constitutes litigation communication as it relates to Simplified's causes of action against defendants. The content of the communication is about the ongoing civil action against defendants and Simplified's request for information and documentation. It is also pre-litigation activity as to Captive. This email was clearly an act in furtherance of Simplified's constitutional right of petition and is protected activity for purposes of the anti-SLAPP statute.

The first prong of the two-step anti-SLAPP analysis is satisfied.

E. *Prong 2*: *Probability of Prevailing on the Claims*

Cross-complainants contend the trial court's order granting Simplified's anti-SLAPP motion should be reversed because the litigation privilege did not preclude its cause of action for defamation. To defeat an anti-SLAPP motion, cross-complainants must overcome any substantive defenses that exist. (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 38.) Accordingly, we must determine whether the litigation privilege applies. If it does not, then we must determine whether cross-complainants have shown that its defamation cause of action otherwise has minimal merit.

Civil Code section 47 provides, in relevant part: "A privileged publication or broadcast is one made: [¶] . . . [¶] . . . In any . . . judicial proceeding, [and/or] in any other official proceeding authorized by law . . . ." (*Id.,* subd. (b).) The litigation privilege is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.) Thus, cross-complainants cannot establish a probability of prevailing if the litigation privilege precludes a finding of liability on the defamation cause of action.

The principal purpose of the litigation privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of harassment in subsequent derivative actions. (*Action Apartment, supra,* 41 Cal.4th at p. 1241.) The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings (2) by litigants

14

or other participants authorized by law (3) to achieve the objects of the litigation and (4) that have some connection or logical relation to the action. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) The privilege is "not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen*, *supra*, 37 Cal.4th at p. 1057.)

As discussed, Wahi's emails to Schultz of Captive constitute communications made in anticipation of litigation, whereas Dougan's email constitutes communication made during litigation. The content of the emails was related to litigation, as the emails contained requests for information and documentation relevant to Wahi's and Dougan's expressed belief that cross-complainants had committed fraud in the sale of workers' compensation insurance to Simplified.

Although Captive was a potential witness at the time Wahi sent his emails to Schultz, Captive's role evolved to that of a potential defendant near the time Dougan sent his email stating "it is our contention that you owe a duty to Simplified" and requesting information before leaving Simplified "no alternative to seek other means to obtain it."

Lastly, the communications were "by litigants or other participants authorized by law," as Wahi and Dougan are Simplified's owner and chief financial officer, respectively.

Accordingly, we find the litigation privilege defeats cross-complainants' defamation cause of action.

15

F.      *No Duty to Meet and Confer Before Filing Anti-SLAPP Motion.*

Cross-complainants argue Simplified's counsel's "sharp practices are inconsistent with their counsel's legal and ethical obligations under California law." They believe Simplified's counsel had opportunities to discuss the possibility of filing an anti-SLAPP motion—"either by way of a 'meet and confer' conference or a simple informal call" and refused to do so. Cross-complainants allege they "candidly informed" Simplified's counsel that they planned to dismiss the cross-complaint before Simplified filed the anti-SLAPP motion to strike the defamation cause of action from the cross-complaint. Cross-complainants then conclusively state Simplified's requested attorney fees should be denied because of its bad faith tactics, or, in the alternative, Simplified "should not receive their fees from the date of the first conversation about the motion with Appellants' counsel through the hearing date on the motion."

First, section 425.16 does not require that the parties meet and confer before filing an anti-SLAPP motion. (See generally, § 425.16.) Cross-complainants have not provided us with authority that says otherwise.

Second, failure to offer reasoned analysis of the issue constitutes a waiver. " 'When an appellant fails to raise a point, or *asserts it but fails to support it with reasoned argument and citations to authority*, we treat the point as waived.' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956, italics added; see also *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["[t]he absence of cogent legal argument or citation to authority allows this court to treat the contentions

16

as waived"].)  Cross-complainants did not provide authority in their opening and reply briefs in support of their contention.

However, during oral argument on October 27, 2020, cross-complainants cited to and relied on new authority—*Oakland Bulk and Oversized Terminal, LLC v. City of Oakland* (2020) 54 Cal.App.5th 738 (*OBOT*)—that they contend was not available in time to be included in their briefs on appeal.[2]  They argued *OBOT* supports their contention that the $24,175 attorney fee award is "excessive" and should be reduced, because Simplified's anti-SLAPP motion did not truly fulfill the purpose of section 425.16 and caused "unnecessary delay."

In *OBOT*, a company sued the City of Oakland (City) alleging three breach of contract and seven tort causes of action. (*OBOT*, *supra*, 54 Cal.App.5th at pp. 741, 745.)  In response, the City filed a demurrer and a standard motion to strike per section 436; the hearing for both was set for April 25, 2019.  (*Id.*, at p. 746.)  Meanwhile, the City filed an anti-SLAPP motion to strike the complaint in part; a hearing was set for May 14, 2019.  (*Ibid.*) The trial court advanced the City's anti-SLAPP motion so that it came on for hearing with the other two matters.  (*Id.* at p. 741.) The court sustained the demurrer in part with leave to amend. (*Id.* at p. 749.)  It granted the standard motion to strike as to five paragraphs regarding specific allegations and denied the motion in all other respects.  (*Id.* at pp. 749–750.)

---

[2]     On October 28, 2020, the day after oral argument, cross-complainants filed a letter again requesting that we consider this new authority.

17

And, finally, the court found the anti-SLAPP motion " 'premature given that the Court has given the [company] leave to amend their complaint' "; the court stated it " 'does not have the operative pleadings upon which to render a determination of the motion to strike and in particular, whether there is a potential for [the company] to prevail on their claims.' " (*OBOT*, *supra*, 54 Cal.App.5th at p. 749.)  It denied the City's anti-SLAPP motion " 'without prejudice to a motion to strike some or all of the amended complaint to be filed.' " (*Ibid*.)  The City did not wait for the amended complaint and appealed, arguing the trial court erred in allowing the company to amend their complaint after the anti-SLAPP motion was filed.  (*Id*. at p. 750.)

On appeal, our colleagues from the First District held:  "[I]t made perfect sense for [the court] to allow [the company] to amend their complaint and to defer a ruling on the [anti-SLAPP] motion" until the operative pleading/complaint is filed.  (*OBOT*, *supra*, 54 Cal.App.5th at p. 750.)  They found the trial court "proceeding in such fashion would promote judicial efficiency and economy—and not thwart any purpose of the anti-SLAPP law," and commented that the court "wisely did what [it] did rather than analyze [what] would have been a superseded complaint." (*Id*. at p. 751.)  They observed "how the anti-SLAPP procedure can, in the wrong hands, be abused, 'resulting in substantial cost—and prejudicial delay.' " (*Id*. at p. 760.)  As for the issue of attorney fees, they posed the question:  "[A]ssuming the City were to be successful [in its appeal from the denial of the anti-SLAPP motion], just how much does the City expect to be awarded for the successful striking of two lines in a 63-page complaint?" (*Id*. at p. 765.)

Here, cross-complainants had notified Simplified of their intent to dismiss the entire cross-complaint (including the defamation cause of action) before Simplified filed its anti-SLAPP motion to strike the defamation cause of action. They contend Simplified's right to participate was not advanced by the anti-SLAPP motion, as it was known that cross-complainants were going to dismiss the cross-complaint. As such, they argue Simplified was "not entitled to the outrageous attorneys' fees they sought for the unnecessary motion regarding an already-dismissed Cross-Complaint." They request that we rely on *OBOT* to remand the matter to the trial court to review and reduce its $24,175 attorney fee award to Simplified.

While we appreciate cross-complainants' novel argument and reliance on *OBOT*, the fact remains that they waited to withdraw the cross-complaint (without prejudice) until *after* the deadline had passed for Simplified to file a response to the cross-complaint. Meanwhile, Simplified filed its anti-SLAPP motion on the last day of its deadline. It is true cross-complainants' counsel had notified Simplified's counsel of their intent to voluntarily dismiss the cross-complaint. Yet there was no written stipulation to that effect and nothing in writing (based on our review of the record) to hold cross-complainants accountable had they reneged on their verbal commitment to dismiss. Thus, we do not find Simplified's decision to file a response by way of a special motion to strike the defamation cause of action a "sharp practice" any more than was cross-complainants' decision to file the request for dismissal only after Simplified's deadline to file a response had passed.

19

## DISPOSITION

The order granting Simplified's special motion to strike the cause of action for defamation in the cross-complaint is affirmed. Simplified Labor Staffing Solutions, Inc. and Simplified Staffing Labor Solutions, LLC are awarded costs on appeal.


STRATTON, J.

We concur:


GRIMES, Acting P. J.


WILEY, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TRINITY RISK MANAGEMENT, LLC, et al., <br><br>     Cross-complainants and Appellants, <br><br>       v. <br><br> SIMPLIFIED LABOR STAFFING SOLUTIONS, INC., et al., <br><br>     Cross-defendants and Respondents. | B297176 <br><br> (Los Angeles County Super. Ct. No. BC709369) |

THE COURT:

    The opinion in the above-entitled matter filed on January 11, 2021, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

    There is no change in the judgment.

_____
GRIMES, Acting P. J.          STRATTON, J.          WILEY, J.